Mr. Justice Clayton
delivered the opinion of the court.
The great question in this cause is, whether the 8th, 9th and 10th sections, of the act of 1843, “ prescribing the mode of proceeding against incorporated banks, for a violation of their corporate franchises,” are constitutional or not. These sections, in substance, provide that, when a judgment of forfeiture is entered against a bank, its debtors shall not be thereby released from their debts and liabilities, but that the court rendering such judgment shall appoint one or more trustees to take charge of the books and assets of the same, to sue for and collect all debts due to it, to sell all its property, and .apply the same as might be thereafter directed by law to the payments of its debts.
The objection to the validity of this law is, that it impairs the obligation of the contract, between such bank and its debtor. It is insisted that at the time of the contract, it was a part of the law of the land, that if the bank so acted that its charter should be taken from it, the consequence was that the debtor was released from his liability; that this law entered into and formed a part of the contract, and that the change made by this statute impairs the obligation of that portion of the contract, and thus-violates the constitution.
*522 It is moreover insisted that all the laws in force, when a contract is made, are incorporated with and form parts of it, and cannot be changed without violating this constitutional prohibition. In other words, legislation must not only be prospective, but it must be construed to operate only on contracts entered into after its passage. The cases of Bronson v. Kinzie et al. 1 How. S. C. R. and McCracken v. Hayward, 2 How. 608, are relied on as establishing these principles. The first of these was a case under the valuation laws of the state of Illinois, and it Avas a mortgage, the date of which rvas antecedent to the passage of the law. The extent of the right of the legislature to charge the remedy existing at the time of the contract, was the point before the court, and all their expressions must be construed with reference to that point. The opinion says, “ it is difficult perhaps to draw a line that would be applicable to all cases between legitimate alterations of the remedy, and provisions Avhich in the form of remedy impair the right.” “ There is no difference between a retrospective law, declaring a particular contract or class of contracts to be abrogated and void, and one which took away all remedy to enforce them, or encumbered it with conditions that rendered it useless or impracticable to pursue it. No one doubts the rights or the remedy of the mortgagee, for by the laws of the state then in force, this right and this remedy were a part of the law of the contract, without any express agreement by the parties. They were annexed to the contract at the time it was made, and formed a part of it; and any subsequent law impairing the rights thus acquired, impairs the obligation Avhich the contract imposed.”
The case of McCracken v. Hayward arose under the same law of Illinois. In this case the court says, “ The obligation of the contract consists in its binding force upon the party Avho makes it. This depends upon the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract,, *523 in favor of one party to the injury of the other. It is not to be understood that all state legislation on existing contracts is repugnant to the constitution. It is within the undoubted power of state legislatures to pass recording acts, by which the elder grantee shall be postponed to the younger, if the prior deed is not recorded within the limited time, and the power is the same, whether the deed is dated before or after the passage of the recording act. Such too is the power to pass acts of limitation and their effect.” “ The obligation of the contract between the parties in this case was to perform the contracts and undertakings therein; the right of the plaintiff was to damages for the breach thereof, to bring suit and obtain judgment, to take out and prosecute an execution against the defendant till the judgment was satisfied, pursuant to the existing laws.” 2 How. 613.
These decisions certainly establish the principle that all legislation which materially affects the laws for the enforcement of a contract existing at the time it is made, impairs the obligation of the contract. This is the effect, although no reference be made to such laws by the contract, as fully as if they were written out at the time and incorporated into it. To this extent the influence of these decisions meets with unqualified acknowledgment. But these cases do not show, nor is there any reason to believe, when they are compared with the prior decisions of the same court, that it was meant to prohibit all legislation in regard to existing contracts, as beyond the pale of legislative power. The court itself says that it is not to be understood that all legislation in regard to existing contracts is repugnant to the constitution. Indeed, such a construction would make our frame of government an impotent and impracticable scheme. The effect of the law must be looked to in every instance, and if it dinfinish the binding force of the contract on the party who makes it, then it is obnoxious to the constitution, otherwise not. The statute book of every state is filled with provisions which bore upon contracts in existence at the time of their passage ; to strike all these out, would leave the statutes themselves in a hopeless state of mutilation and confusion.
*524 There is a subsequent case which came before the same exalted tribunal, which explains to some extent their own sense of the two cases just referred to. I mean The State of Maryland v. Baltimore and Ohio Railroad Co. 3 How. 534. In that case, by an amendment of the charter of the company in 1836, ,it was enacted “that the state should subscribe for three millions of the stock of the company, with a proviso that if the company should not locate its road so as to pass through Washington county, they should forfeit one million of dollars to the state of Maryland, for the use of said county.” In 1841, another act was passed, repealing so much of the former act as directed the route of the road through Washington county, and releasing the forfeiture imposed by the former act, by way of penalty for non-compliance. The constitutionality of the latter act was the turning point of the case. The court says, “ a provision that the party shall forfeit a particular sum, in case he does not perform' an act required by law, has always, in the construction of statutes, been regarded not as a contract with the delinquent party, but as the punishment for an offence. Undoubtedly, in the case of individuals, the word forfeit is construed to be the language of contract, because contract is the only mode in which one person can become liable to pay a penalty to another for a breach of duty, or the failure to perform an obligation. In legislative proceedings, however, the construction is otherwise, and a forfeiture is always to be regarded as a punishment inflicted for a violation of some duty enjoined upon a party by law; and such, very clearly, is the meaning of the word in the act in question.” 552. The right to remit a penalty or forfeiture is fully recognized, and the decision was in favor of the validity of the law.
The principle of this case fully comprehends the one before this court. By a breach of the conditions of the charter, the bank forfeited its franchises. This forfeiture the legislature had the right to remit in whole or in part. Angel & Ames on Corp. 664. It interferes with no part of the contract between the bank and its debtors, and they have no right to complain.
But the principle, which the counsel for the appellant so *525 strenuously invokes, would not aid them. Say that, at the request of the debtor, it was written in the contract after the promise to pay the money, —provided the bank does not forfeit its charter ; be it so, the bank may reply, but write farther,— provided also the state does not release or remit the consequences of such forfeiture. If all this were done, the case would but stand as it now does, when the legislature has exercised a lawful and constitutional power.
The history of legislation in the states of this Union affords but too many instances of the fatal facility of chartering banks, and too many evidences of the ill effects of such policy. At some period or other of their existence, a great proportion of the states has run the same round which ours has done. Numerous banking companies have been incorporated — excessive issues of their paper have been made — inflation — depreciation and insolvency have followed; and then comes legislation to compel them to wind up, to seize on their charters, and to save a few planks from the wreck. The same general features are exhibited in their course — a course too often “ begun in folly, closed in tears.” An eloquent advocate describes it as a sort of national madness, insists that no one should be punished for it, and declares that he knows not how to frame a bill of indictment against a whole people. The cool and sagacious sons of New England, the impetuous and impulsive children of the South, and the hardy and adventurous men of the West, have all performed the same circuit. Yet whenever this point has been made, and it has been heretofore made, it has invariably been decided, that the effort to save the wreck for the creditors was constitutional. In many of the states it has been acted upon and enforced by the courts, as an unquestionable exercise of legitimate power.
The cases cited by the counsel for the appellant, in support of his position, that these provisions are unconstitutional, do not sustain him. The case in 2 Harrington, 14, arose under a statute which was not passed until two years after the dissolution of the corporation. It assumed to revive the corporation, after it had expired by its own limitation, “ with the same *526 powers, privileges and immunities, that had been granted to it by its original charter.” The decision was, that these words were not intended by the legislature to revive the debts which had been extinguished two years before, and that it was unnecessary to decide what would have been the effect, if the debts due to the corporation had been in express terms revived. Neither is it necessary for ns to decide such point.
The case of The State Bank v. The State, 1 Blackford’s Ind. Reports, is liable to the same remarks. The court decides that the act under which the proceeding took place, was not intended to change the common law rule in regard to the consequences of á forfeiture. The debts due to the bank were considered upon common law principles unaffected by the act, and therefore subject to extinguishment by a dissolution of the corporation.
The same is true in regard to the North Carolina decision. It was holden that the facts did not bring the case within the statute of that state, providing that upon a judgment of forfeiture or dissolution against a corporation, the consequence shall not be to extinguish the debts due to or from it, but that a receiver should be appointed to collect and pay them over. The court decided the act did not embrace a corporation whose existence was terminated by the expiration of its charter from lapse of time, and therefore applied the common law principle. There seemed to be no doubt, by the court or the counsel, that if the case had come within the act, the debt would not have been extinguished. Fox v. Horah, 1 Ired. Eq. Cas. 362. Thus none of these cases are like the present. *
In Ohio, a similar law has been acted on as constitutional. 13 Ohio Reports, 270. In New York, the provision has been held constitutional. Bank of Columbia v. Attorney General, 3 Wend. 600. By the Maryland act of 1818, the 5th section authorizes, upon a given state of facts, a judgment of forfeiture. The sixth section directs that the court giving the judgment of forfeiture, shall appoint commissioners to settle and close the concerns of the bank. This act has not only been recognized as constitutional by the supreme court of that state, but they *527 say in one of their decisions, it had been decided to be constitutional by the supreme court of the United States. Batik of Maryland v. Ruff, 7 Gill & Johns. 465.
Let us now turn to cases which have been decided in our own court. The first we will notice is The Bank of Mississippi v. James Wrenn, 3 S. & M. 791. The original charter was by its terms, to have expired on the last day of December, 1834. Three several acts were passed, giving further time for it to collect its debts until January, 1844. One of its suits depended in this court for many years. Its right to prolonged existence for this qualified purpose, was never questioned in this court; and the suit finally abated by the expiration of the last act on the subject in 1844. This case proves nothing, except that neither the court nor the counsel, seem ever to have supposed that these enabling acts were unconstitutional.
The next is the case of Payne et al v. Baldwin, Vail v. Hufly, 3 S. & M. 671. That case involved the constitutionality of the act passed in 1840, which forbids the transfer by any bank, of any bond, bill, note or other evidence of debt. After most elaborate argument, the law was sustained, although it certainly took away from the bank one of the incidental powers which it had enjoyed and exercised, that of negotiating its paper.
Next is the case of The Commercial Bank of Rodney v. The State of Mississippi, 4 S. & M. 440. That case involved the constitutionality of the 6th section of the same statute now under consideration. That clause injoins and restrains the banks, their agents and assignees, from proceeding in the collection of any debts due to them, from the time the information in the nature of a quo warranto is filed, until its determination. This clause attracted the largest share of the court’s attention, yet the whole act, and the whole series of acts on the subject, passed under review to some extent. The court was unanimous in the opinion that this section did not impair the obligation of the contract of the state with the bank, in the sense of the constitution. Upon this point there was no decision, though in other particulars there was.
*528 All the acts upon this subject must be viewed in connection, and regarded as one. The statute of 1840 forbade all assignments of their negotiable securities by the banks, at the same time that it declared a suspension of specie payments a forfeiture of charter. Not more than one or two banks in the state were then in a condition to avoid falling under this provision. But for this provision they might have made a general assignment or transfer of their assets to trustees, to collect for the creditors and stockholders, and such assignment would have been valid. Other acts followed on the same subject, when at last came this now under consideration. The act of 1840 forbade all transfers ; the act of 1843 forbade all collections by the banks, during the pendency of any proceeding by quo warranto ; and if the sections now under consideration are declared unconstitutional, the judgment of forfeiture will not only operate to extinguish all debts now due to such institutions, but nearly all which were due in 1840, as we know that from the operation of the valuation law the process of collection was very slow from 1840 to 1843. In view of all these enactments I am authorized, by a majority of the court to say, that the sixth section of the act of 1843 could never have obtained their sanction, except in connection with the remaining sections, because apart from them its manifest and direct effect would bean extinguishment not only of all debts due at the time of the judgment of forfeiture, but of all due at the date of filing the information. This retroactive effect of the judgment could not but impair the obligation of the charter. The sixth, eighth, ninth and tenth sections are therefore in our view inseparably connected; they are parts of one whole, and the sixth having been sustained, the others must be likewise. It was sustained because its avowed and ostensible object was to preserve the assets of the banks pending litigation, and until the court could, under the remaining sections, have them collected and applied to the creditors.
' The remaining points will be disposed of more briefly. It is objected that the law is imperfect, and cannot be carried into effect, because it does not say in what name suits for the collec *529 tion of debts due the banks shall be brought. The words of the act are “ that upon judgment of forfeiture against any bank the debtors of such bank shall not be released by such judgment from their debts and liabilities to the same; but it shall be the duty of the court rendering such judgment to appoint one or more trustees to take charge of the books and assets of the same; to sue for and collect all debts due such bank, and to sell and dispose of all property owned by such bank, and the proceeds of the debts when collected, and of the property when sold, to apply as may hereafter be directed by law to the payment of the debts of such bank.” Acts of 1843, p. 55.
By the judgment of forfeiture, or by the execution of the judgment according to some of the authorities, the corporate franchises of the bank are at an end. If suit is to be brought, it cannot be presumed to have been the intention of the legislature that it should be in the name of a defunct corporation, and of necessity it must be in the name of the trustees, The law in regard to the estates of decedents does not direct that the suits brought by executors or administrators shall be in their own name; yet no one can doubt that this is the proper mode. The analogy between the two statutes is perfect. They supply the succession or representation, give a right of suit, and as an incident to such right the power and authority to sue must be in the name of the trustees. No doubt the legislature might have continued the corporate franchises, so far as to authorize suits to be brought in the name of the bank, to wind up its concerns. This mode has been adopted in several of the states. But this would require a plain and manifest intent, and without it we can see no objection to the suit in the name of the trustees. 13 Ohio R. 270.
A short time before the expiration of its charter, the first bank of the United States, by deed of general assignment assigned all its property, debts, securities, &c. to assignees in trust for the liquidation of its affairs. The assignees filed a bill for the recovery of the amount of certain notes due to the bank. Chief Justice Marshall, in delivering the opinion of the court, said: “The court will not give any opinion whether any action can *530 be maintained at law upon any of the promissory notes in the record, by an assignee who does not claim the same by an indorsement upon the notes. For in this case there is no specific assignment of these notes; the only assignment isa general assignment in trust, of all the property of the late bank of the United States, and as the act of incorporation had expired, no action could be maintained at law by the bank itself. Under these circumstances the court is clearly of opinion that a suit may be maintained in equity against the other parties to the notes.” Lenox v. Roberts, 3 Wheaton, 376. The transfer of the effects of the banks by the clause now under consideration, is more comprehensive than the deed of assignment under which that decision was made. It directs the performance of acts by the trustees which can only be accomplished by a transfer to them of the legal ownership of the property. If it goes that length they can of course maintain an action at law. , The late bankrupt act does not in terms vest the right of action in the assignee in his own name. But it divests by the decree of bankruptcy the property out of the bankrupt, and vests it in the assignee, and no legal mind doubts that the latter is clothed with the right of action at law. But this is a suit in equity, and we need not go farther than the case just citecl.
It is next objected that the suit cannot be revived in the name of the trustees, either upon motion or by scire facias. By the statute law of this state, the court of chancery and this court each is clothed with the power of making rules for the conduct of suits depending in them. In the exercise of this power the chancery court has directed “ that when any party shall die, the proper representative of the personalty or realty, as the case may be, may voluntarily come in and be admitted a party to the suit.” This court has adopted the rules of the chancery court for its guidance and government in chancery proceedings. We think the present case is comprehended by the rule. United States Bank v. Merchants Bank, 1 Rob. Va. R. 589; Beaston v. Farmers Bank of Delaware, 12 Peters 134; Louisville Railroad Co. v. Litson, 2 How. S. C. R. 558. In a case like this in all its essential features, the court of appeals in Virginia permitted the *531 case to proceed, after the expiration of the charter, without noticing the dissolution upon the record. In that case the bank had made an assignment before the dissolution. Bank of Alexandria v. Patten, 1 Rob. Va. R. 525.
The last objection we shall notice is, that the statute is insufficient and incomplete in this, that it directs that the assets shall be applied as may be hereafter directed by law to the payment of the debts of the bank, and as there has been no direction subsequently given, the law is too imperfect to be enforced.
We cannot yield to this construction. The act in effect declares the assets of the bank to be a trust fund for the payment of debts, and makes it the duty of the trustees to collect them. This is a trust which would be enforced in a court of equity, without any further legislation. Indeed if the legislature were to attempt to apply the assets to any other purpose than the payment of the debts of the corporation, it would transcend its constitutional limits. That body might have permitted the debts to be extinguished'by the'dissolution, but having rescued them from this fate and declared them a trust fund, it could not divert it to any other object. But no attempt of that kind has been made. It might have been intended to pass some law regulating the mode in which payment was to be coerced from the trustees, but upon their failure to apply any other remedy, the courts of the country would apply the existing remedies, which are abundantly sufficient for the purpose.
The motion will be sustained, and the cause stand revived.
Mr. Chief Justice Sharkey concurred in the foregoing opinion.