JOHN L. McCRACKEN, PLAINTIFF IN ERROR, *v.* CHARLES HAYWARD.

A law of the state of Illinois, providing that a sale shall not be made of property
levied on under an execution, unless it will bring two-thirds of its valuation,
according to the opinion of three householders, is unconstitutional and void.
The case of Bronson *v.* Kenzie, 1 Howard, 311, reviewed and confirmed.
Where the Circuit Court, by a rule, adopts the process pointed out by a state
law, there must be no essential variance between them. Such a variance is
a new rule, unknown to any act of Congress or the state law professedly
adopted.

THIS case came up on a certificate of division in opinion from the
Circuit Court of the United States for the district of Illinois.

The case was this: In 1840, McCracken, the plaintiff in error,
recovered a judgment in the Circuit Court against Hayward for the
sum of $3986 67 cents and costs.

In February, 1841, the state of Illinois passed the following law:
        " An act regulating the sale of property.

" Sect. 1. Be it enacted by the people of the state of Illinois, repre-
sented in the general Assembly, That when any execution shall be
issued out of any of the courts of this state, whether of record or
not, and shall be levied on any real or personal property, or both, it
shall be the duty of the officer levying such execution, to summon
three householders of the proper county, one of whom shall be
chosen by such officer, one by the plaintiff, and one by the defend-
ant in the execution ; or, in default of the parties making such choice,
the officer shall choose for them : which householders, after being duly
sworn by such officer so to do, shall fairly and impartially value the
property upon which such execution is levied, having reference to
its cash value, and they shall endorse the valuation thereof upon the
execution, or upon a piece of paper thereunto attached, signed by
them ; and when such property shall be offered for sale, it shall not
be struck off unless two-thirds of the amount of such valuation shall
be bid therefor: Provided, always, that the plaintiff in any execution
issued from any court of record of this state, may elect on what
property he will have the same levied, except the land on which the
defendant resides, and his personal property, which shall be last
taken in execution. And in all other executions issued from any of
the courts of this state not being courts of record, the plaintiff in
execution may elect on what personal property he will have the same

levied; excepting and reserving, however, to the defendant in execution, in all cases, such an amount and quantity of property as is now exempt from execution by the laws of this state: And provided, further, that all sales of mortgaged property shall be made according to the provisions of this act, whether the foreclosure of said mortgage be by judgment at law, or decree in chancery. The provisions of this act shall extend to judgments rendered prior to the first day of May, eighteen hundred and forty-one, and to all judgments that may be rendered on any contract or cause of action accruing prior to the first day of May, eighteen hundred and forty-one, and not to any other judgments than as before specified.

"Sect. 2. When any property shall be levied on and appraised in the manner required by this act, and the same shall be susceptible of a division, no greater quantity thereof than will be sufficient to pay the amount of the execution or executions thereon levied, together with the proper costs, at two-thirds of the valuation thereof, shall be offered for sale by the officer in whose hands such execution or executions may have been placed for collection.

"Sect. 3. This act shall be in force from and after its passage, and the secretary of state is hereby required to have a thousand copies thereof printed immediately after its approval, and transmit them to the clerks of the county commissioners' courts of the several counties in this state for distribution among the proper officers thereof. Approved, February 27, 1841."

In June, 1841, the Circuit Court of the United States adopted the following rule:

"When the marshal shall levy an execution upon real estate he shall have it appraised and sold under the provisions of the law of this state, entitled 'An act regulating the sale of property,' approved 27th February, 1841, if the case come within the provisions of that law; and any two of the three householders selected under the law agreeing, may make the valuation of the premises required."

In May, 1842, a pluries execution was issued on the judgment, under which the marshal levied upon real estate, and advertised it for sale in the ensuing August. It was appraised by three householders, and no person bidding two-thirds of the valuation, it was not sold.

In March, 1843, the plaintiff sued out a *venditioni exponas* to sell

the property levied upon as above stated; and in May served a written notice on the marshal, directing him not to have the property valued, but to sell it to the highest bidder, regardless of the statute of Illinois.   The marshal replied that he conceived it-to be his duty to be governed by the rule of court.

In June, 1843, the plaintiff, by his counsel, made the following motion to the court:

" 1.  The plaintiff, by Arnold, his attorney, comes and moves the court to set aside the return to the pluries execution issued in this cause, dated 16th day of May, 1842, under which the property levied upon was appraised, and not sold, because no one would bid two-thirds of appraised value.

" 2.  That the court direct the marshal to sell said property to the highest bidder, without regard to the valuation already made, and without having it valued again.

" 3.  That the marshal proceed to sell said property without regard to the provisions of the laws regulating the sale of property, passed since the rendition of the judgment, but that he execute the process of the court, enforcing the judgment according to the remedy existing at the time of the rendition of the judgment, and the making of the contract between the parties.

" 4.  That the marshal be directed to proceed and sell the property levied upon, without regard to the provisions of the act of February, 1841, of the legislature of Illinois, and of January, 1843, regulating the sale of property, above referred to."

This motion was sustained by an affidavit, setting forth the facts in the case.

Upon the argument of the motion, the judges were divided in opinion upon the following points.

" 1st.  Whether the said motion shall be granted in manner and form as the same is asked or refused, or any part thereof.

" 2d.  Whether the return of the marshal on the execution above set forth, dated May 16, 1842, under which the property was appraised and not sold, because two-thirds of appraised value was not bid therefor, shall or shall not be set aside as insufficient.

" 3d.  Whether the court shall or shall not make an order directing the marshal to sell the property levied on in the usual mode at public auction to the highest bidder, without having the same valued by three householders, and without regard to valuation which has

been made, and without requiring two-thirds of said valuation to be bid therefor.

" 4th. Whether the court shall or shall not direct the marshal to proceed and sell the property levied upon without regard to the provisions of the act of February 27, 1841, of the legislature of Illinois, and the rule adopting said law at the June term, 1841.

" 5th. Whether the court will or will not direct the enforcement of said judgment according to the laws regulating the remedy when said judgment was entered and the contract made."

Upon which certificate of division the cause came up to this court.

The case was submitted upon a printed argument by *Isaac N. Arnold,* counsel for the plaintiff, which the reporter regrets his limits will not allow him to re-publish.

Mr. Justice BALDWIN delivered the opinion of the court.

It appears from the record in this case, that the plaintiff obtained a judgment against the defendant, in June, 1840, on which a *pluries fi. fa.* issued at May term, 1842; real property was levied on; appraised according to the provisions of a law of Illinois, passed on the 27th February, 1841, and the rule of the Circuit Court of that state, adopted in June of the same year, which law and rule are inserted in the statement of the case by the reporter.

The property levied on was advertised for sale by the marshal, in August, 1842, but was not sold, as no one bid two-thirds of the appraised value. In March, 1843, the plaintiff sued out a *venditioni exponas,* with directions to the marshal to sell the property, regardless of the state law, which the marshal refused to obey, conceiving himself bound by the aforesaid rule of court. Whereupon the plaintiff moved the court for an order directing the marshal to sell to the highest bidder, without valuation, or any regard to the state law

" 1. The plaintiff, by Arnold, his attorney, comes and moves the court to set aside the return to the pluries execution issued in this cause, dated 16th day of May, 1842, under which the property levied upon was appraised, and not sold, because no one would bid two-thirds of appraised value.

" 2. That the court direct the marshal to sell said property to the highest bidder, without regard to the valuation already made, and without having valued it again.

"3. That the marshal proceed to sell said property without regard to the provisions of the laws regulating the sale of property, passed since the rendition of the judgment, but that he execute the process of the court, enforcing the judgment according to the remedy existing at the time of the rendition of the judgment, and the making of the contract between the parties.

"4. That the marshal be directed to proceed and sell the property levied upon, without regard to the provisions of the act of February, 1841, of the legislature of Illinois, and of January, 1843, regulating the sale of property above referred to."

On the argument of this motion, the court were divided in opinion on the points mentioned in the statement. These questions must be considered in two aspects, 1. In reference to the Constitution. 2. The laws of the United States, as the tests of the validity of the law of Illinois and the rule of court, which, it is said, affect only the remedy, but not the right of the plaintiff arising on the contract between the parties, and the judgment rendered upon it.

In placing the obligation of contracts under the protection of the Constitution, its framers looked to the essentials of the contract more than to the forms and modes of proceeding by which it was to be carried into execution; annulling all state legislation which impaired the obligation, it was left to the states to prescribe and shape the remedy to enforce it. The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either, than that which the terms of the contract indicate, according to their settled legal meaning; when it becomes consummated, the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract, in favour of one party, to the injury of the other; hence any law, which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution.

This principle is so clearly stated and fully settled in the case of Bronson *v.* Kinzie, decided at the last term, 1 How. 311, that nothing remains to be added to the reasoning of the court, or requires a reference to any other authority, than what is therein referred to; it is, however, not to be understood that by that, or any former decision of this court, all state legislation on existing contracts is repugnant to the Constitution.

" It is within the undoubted power of state legislatures to pass recording acts, by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within the limited time, and the power is the same whether the deed is dated before or after the passage of the recording act. Though the effect of such a law is to render the prior deed fraudulent and void as against a subsequent purchaser, it is not a law impairing the obligation of contracts; such, too, is the power to pass acts of limitation, and their effect. Reasons of sound policy have led to the general adoption of laws of both descriptions, and their validity cannot be questioned. The time and manner of their operation, the exceptions to them, and the acts from which the time limited shall begin to run, will generally depend on the sound discretion of the legislature, according to the nature of the titles, the situation of the country, and the emergency which leads to their enactment. Cases may occur where the provisions of a law may be so unreasonable as to amount to the denial of a right, and call for the interposition of the court." 3 Peters, 290.

The obligation of the contract between the parties, in this case, was to perform the promises and undertakings contained therein; the right of the plaintiff was to damages for the breach thereof, to bring suit and obtain a judgment, to take out and prosecute an execution against the defendant till the judgment was satisfied, pursuant to the existing laws of Illinois. These laws giving these rights were as perfectly binding on the defendant, and as much a part of the contract, as if they had been set forth in its stipulations in the very words of the law relating to judgments and executions. If the defendant had made such an agreement as to authorize a sale of his property, which should be levied on by the sheriff, for such price as should be bid for it at a fair public sale on reasonable notice, it would have conferred a right on the plaintiff, which the Constitution made inviolable; and it can make no difference whether such right is conferred by the terms or law of the contract. Any subsequent law which

3 F

denies, obstructs, or impairs this right, by superadding a condition that there shall be no sale for any sum less than the value of the property levied on, to be ascertained by appraisement, or any other mode of valuation than a public sale, affects the obligation of the contract, as much in the one case, as the other, for it can be enforced only by a sale of the defendant's property, and the prevention of such sale is the denial of a right. The same power in a state legislature may be carried to any extent, if it exists at all; it may prohibit a sale for less than the whole appraised value, or for three-fourths, or nine-tenths, as well as for two-thirds, for if the power can be exercised to any extent, its exercise must be a matter of uncontrollable discretion; in passing laws relating to the remedy which are regardless of the effect on the right of the plaintiff. This was the ruling principle of the case of Bronson v. Kinzie, which arose on a mortgage containing a covenant, that, in default of payment, the mortgagee might enter upon, sell, and convey the mortgaged premises, as the attorney of the mortgagor; yet the case was not decided on the effect and obligation of that covenant, but on the broad and general principle, that a state law, which professedly provided a remedy for enforcing the contract of mortgage, effectually impaired the rights incident to, and attached to it by the laws in force at its date, was void. No agreement or contract can create more binding obligations than those fastened by the law, which the law creates and attaches to contracts; the express power which a mortgagor confers on the mortgagee to sell as his agent is not more potent than that which the law delegates to the marshal, to sell and convey the property levied on, under an execution. He is the constituted agent of the defendant, invested with all his powers for these purposes. The marshal can do under the authority of the law whatever he could do under the fullest power of attorney from the execution debtor; and no state law can prohibit it. It follows that the law of Illinois now under consideration, so far as it prohibits a sale for less than two-thirds of the appraised value of the property levied on, is unconstitutional and void.

The second aspect in which this case must be considered, is with reference to the acts of Congress relating to process and proceedings in the courts of the United States in cases at common law. All the early laws on this subject were carefully and most ably reviewed by this court, in Wayman and Southard, and the Bank of the United States v. Halstead in which it was held, that the proceedings in the

courts of the United States should be the same as they were in the several states at the time of passing the acts of Congress, subject to be altered by the Circuit Courts, or regulations of the Supreme Court. That the proceedings on executions were to be governed by such laws until final satisfaction was obtained, regardless of any subsequent changes by state legislation. 10 Wheat. 20, 51.

Prior to 1828, Congress had passed no process acts applicable to the states admitted into the Union after 1789. To remedy this defect, and to confirm the decisions in the above cases, the act of May, 1828, directed that writs of execution and other final process issued on judgments and decrees, and the proceedings thereupon, shall be the same in each state as are now used in the courts of such state, &c.; thus adopting the same principles which had been established by this court in the construction of the acts of 1789 and 1792. Consequently no state law passed since May, 1828, can have any effect on the proceedings on executions issued from the courts of the United States, unless such laws are adopted by those courts under the proviso in the third section of the act.

The rule adopted by the Circuit Court of Illinois does not fall within this proviso, which declares, " that it shall be in the power of the courts, if they see fit in their discretion, so far to alter final process in said courts as to conform the same to any change which may be adopted by the legislatures of the respective states for the state courts."

This authorizes the court to adopt the change so made by a state law, but not to adopt it only in part, or alter it in any respect. The law directs the appraisement to be made by three householders, one to be selected by the defendant, one by the officer, and one by the plaintiff, without any authority to any two to make it, and, consequently, requiring the concurrence of all. The rule of court adopting this law provides, " that any two of the three householders selected under the law agreeing, may make the valuation required,"—such an adoption is not warranted by the act of 1828; it is legislation in effect, by prescribing a new rule unknown to any act of Congress, or the state law professedly adopted. But had the adoption been in the terms of the law, it could not be recognised, inasmuch as the appraisement therein directed, with the prohibition to sell at less than two-thirds of the valuation, is repugnant to the Constitution of the United States. It also conflicts with the process acts, as construed

in Wayman v. Southard, and the Bank of the United States v. Halstead, and the repeated decisions of this court in later cases—that no state law can be adopted under the act of 1828, which is in collision with any act of Congress. 16 Peters, 94, 312—314.

It must therefore be certified to the Circuit Court, that the motion made by the plaintiff's counsel ought to be granted, and that the directions to the marshal prayed for by the plaintiff, ought to be given in the manner stated in the second, third, fourth, and fifth points certified.

Mr. Justice CATRON.

The third section of the act of 1828, provides, " that writs of exetion, and other final process, issued on (judgments and decrees rendered in any of the courts of the United States, and the proceedings thereupon, shall be the same, (except their style,) in each state, respectively, as are now used in the courts of such state."

A system of rules has been adopted in the Circuit Court of the Kentucky district, regulating final process, and giving a widely different effect to such process from what it had by the laws of Kentucky; a violent controversy was the consequence in that state, and which gave rise to the cases of Wayman v. Southard, and United States Bank v. Halstead, reported in 10 Wheat. The agitation it is understood, was one prominent reason for the introduction of the act of Congress of 1828. It repealed all rules made by the courts of the United States regulating final process, in all the districts, and adopted the execution laws of the respective states, as they then stood; and if nothing more had been done, future legislation on the subject, by the states, would have been cut off. Congress, however, foreseeing new states might come into the Union, to which the act would not apply; and that it might be proper to adopt future state laws, in the existing states, provided—"that it should be in the power of the courts, if they see fit, in their discretion, by rules of court, so far to alter final process in said courts as to conform the same to any change which may be adopted by the legislatures of the respective states for the state courts."

An adoption of the state law, as the legislature had made that law, is the extent of the power conferred. If the courts can alter the law in one respect, it may be altered in all respects; this is not " conformity," but an exercise of the same power the act of 1828,

prohibited. The rule before us will illustrate it. The state law of Illinois enacts that, three valuers shall determine the value of the property levied on by the sheriff; one chosen by the plaintiff; one by the defendant, and the other by the sheriff; that the three must agree in the valuation; and if the property does not bring two-thirds of such valuation, it shall not be sold

The rule provides, that if the appraisers disagree, the value fixed by any two of them shall be sufficient to authorize the marshal to sell. The debtor will naturally select one, who he supposes will set the highest value on the property; the creditor one he supposes will fix the lowest value; the marshal may be favourably disposed to the one side or the other; most probably to the absent creditor—the appraiser of his selection, and the one selected by the debtor, may agree, and usually would. This will cut out all the advantages the statute secured to the creditor, as his selection would have no effect: Take it the other way, and the operation will be the same.

If this change were sanctioned, then, in Pennsylvania and other states, where there are statutes by which lands are directed to be valued by a jury of twelve, to ascertain whether the rents and profits will pay the debt in a given number of years; in which case, the debtor is compelled to take the accruing profits in satisfaction as they arise; and if not, then the lands are to be sold to the highest bidder, could also be altered, and by a rule of court, a majority of two-thirds of the jury be authorized to assess the annual income. It is manifest, if amendments and alterations can be made by the courts, of the state statutes, they must, of necessity, run into an unlimited discretion, if any one feature of the state law is retained. I therefore think the rule of court, adopting the statute of Illinois, with the foregoing amendment, is merely void; and that no part of the state statute is in force in the Circuit Court of the United States in the district of Illinois.

And not having been adopted, it is not before this court for construction; and that it is unnecessary and improper to inquire into the constitutionalty of the state law, as the laws in force in 1828 must govern. In this respect, the opinion in the case of the United States Bank v. Halstead is followed, where the precise question arising in the case before us was presented, (the rule aside,) and in which this court then declined giving any opinion on the valuation law of Kentucky. I have formed no opinion, whether the statute of Illinois is

McCracken v. Hayward.

constitutional or otherwise. The question raised on it is one of the most delicate and difficult of any ever presented to this court; and as our decision affects the state courts throughout, in their practice, I feel unwilling to form or express any opinion on so grave a question, unless it is presented in the most undoubted form, and argued at the bar.

On the questions propounded by the certificate of division, I agree in the answers given by my brethren, because the execution is governed by the laws of Illinois as they stood at the passing of the act of Congress of 1828, without going farther, as I know the constitutional question will affect other states beside Illinois; many, not to say most of them have had, and some now have, valuation laws; in which no distinction is made between contracts made before the passing of the act, and those made afterwards, and that the decision against their validity as to past contracts, will reach a great way farther than may be supposed on a slight examination.

ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the district of Illinois, and on the points and questions on which the judges of the said Circuit Court were opposed in opinion, and which were certified to this court for its opinion, agreeably to the act of Congress in such case made and provided, and was argued by counsel, on consideration whereof, it is the opinion of this court: 1st. That the motion made by the plaintiff's counsel ought to be granted in manner and form as the same is asked; 2d. That the return of the marshal on the execution as set forth, dated May 16, 1842, under which the property was appraised and not sold, because two-thirds of the appraised value was not bid therefor, should be set aside as insufficient; 3d. That the court should direct the marshal to sell the property levied on in the usual mode at public auction to the highest bidder, without having the same valued by three householders, without regard to the valuation which has been made, and without requiring two-thirds of said valuation to be bid therefor; 4th. That the court should direct the marshal to proceed and sell the property levied upon without regard to the provisions of the act of February 27, 1841, of the legislature of Illinois, and the rule adopting said law at the June term, 1841; and, 5thly and lastly, That the court should

direct the enforcement of said judgment, according to the laws regulating the remedy when said judgment was entered and the contract made. Whereupon, it is now here ordered and adjudged by this court, that it be so certified to the judges of the said Circuit Court.