*D. Rorer*, for appellant.

*H. W. Starr*, for appellee.

———•◇•———

3g 489
110 300

## SPROTT *v.* REID.

As a general rule, an execution must pursue and be warranted by the judgment; but a variance in date or description which might have been amended, is not sufficient to invalidate the sale in a collateral proceeding.

Where an execution sufficiently identifies the judgment to render certain the authority upon which it issued, it will invest the sheriff with power to sell.

Where the law provides that the costs of partition shall be paid in the first instance by the petitioners, but eventually by all the parties in interest, it is not necessary that the final judgment for cost against all the parties should show that they were first paid by the petitioners.

A judgment for costs, a necessary incident to a judgment in partition, and is not conditional where it awards execution against such of the parties as should fail to pay their respective portions within sixty days.

The death of defendant in execution at the date of sale cannot affect its validity.

A judgment for cost does not create the obligation of a contract within the U. S. constitution and the special session laws of Iowa of 1844; and where such judgment was rendered prior to the valuation law, and the execution issued under that law, and where the record shows affirmatively, that the property was sold without valuation, the sale is void.

ERROR *to Lee District Court.*

*Opinion by* GREENE, J. Action commenced by H. T. Reid against James Sprott for eighty acres of land on the Half Breed tract in Lee county. Judgment for the plaintiff.

33

Sprott *v.* Reid

On the trial, the plaintiff gave in evidence the record of the judgment of partition, and a sheriff's deed, showing that the land in question had been sold to him in part satisfaction of the judgment for costs, in the partition suit.

The defendant then offered in evidence two executions, issued on said judgment for costs. The *alias* execution was dated June 20, 1844, and directed the sheriff to proceed without regard to the valuation law. This execution recited the judgment as rendered April 7, 1841, when, in fact, it was rendered at the October term of the court, in that year. He then offered to prove that the execution defendant died before the sale to plaintiff, and the court sustained plaintiff's objection to the introduction of such proof.

To show his own right to the land, the defendant offered a deed, under an administrator's sale by an order of court, .ated January 8, 1845; which deed was recorded subsequently to that introduced by the plaintiff. But the defend-.nt's deed was objected to. The court sustained the object-on, and instructed the jury that the evidence introduced .y the plaintiff showed the legal title to be in him.

As several errors are assigned, upon points which have .lready been fully adjudicated by this court, we will present those only which indicate new features for consideration :

1. It is claimed that the executions, introduced by the defendant, show that the plaintiff did not acquire legal title under the sheriff's deed. The variance between the date of the judgment and the date as recited in the execution, is urged as sufficient to invalidate the sale. It is true, as a general rule, that the execution must pursue and be warranted by the judgment. But the variance complained of in this instance is one that might have been amended. It is one of those irregularities which should be regarded as voidable only, and we consider it not enough to invalidate the sale in a collateral proceeding, like the present. The execution so....

Sprott *v.* Reid.

describes and identifies the judgment as to render certain the authority upon which it issued, and that was sufficient to invest the sheriff with power to sell. As the variance is the result of a mistake in the clerk, which might have been amended, and as the execution otherwise identifies the judgment, it cannot, under the prevailing current of authorities, be regarded as fatal to plaintiff's title. *Humphreys* v. *Beeson*, 1 G. Greene, 199; 4 Wend., 585; 8 ib., 676; 5 Cowen, 529; 4 Blackf., 263; 4 How. Miss., 267.

If an execution varies or departs so materially from the judgment upon which it issued, as to render the identity or connection uncertain or doubtful, there would be obvious propriety in regarding a sale under that execution void. In the case at bar, there is no such material variance, and hence the sale is not void on that account.

2. It is objected that the judgment for costs, under which the property was sold, was not such a valid operative judgment as would authorize the execution and sale, but as it is conceded that the jurisdiction of the court was competent to render the judgment of partition, it must be conceded that the powers of the court were equally competent to render the judgment for costs. The latter became a necessary incident to the former, and was expressly authorized by the partition law.

It is urged as an objection to this judgment for cost, that the law, and judgment itself required payment of costs in the first instance by complainant, and that the judgment does not show such payment. The law provides that " all the costs of partition shall be paid in the first instance by the petitioners, but eventually by all the parties, in proportion to their interests." Rev. Stat., 462, § 32. It was not necessary for the judgment to show that the petitioners first paid the costs. It is enough for us to know that the judgment was against those who were eventually to pay the cost in proportion to their respective interests.

As the judgment was authorized by law, it must be pre-

sumed that all necessary facts, preliminary to the judgment, were established to the satisfaction of the court.

But if true that the petitioners did not in the first instance pay the cost, that fact would not exempt the parties from eventual payment, nor divest the court of power to render judgment against them, nor exempt their property from its effects.

Again, it is urged that the judgment was interlocutory and conditional, and authorities are cited showing that such judgments are objectionable. We can see no analogy between those authorities and the judgment under consideration. This was the final judgment in confirmation of the partition. It was rendered by a court of competent authority, and awarded an execution against such of the parties as should fail to pay the costs within sixty days. The judgment, then, was not interlocutory or conditional. It was final and absolute. It unconditionally required payment of cost, and unconditionally awarded an execution against those who did not pay their respective portions within sixty days — thus virtually granting a stay of execution for that time. It will hardly be contended that a mere stay of execution makes a payment conditional. We conclude, then, that there was a valid and subsisting judgment.

3. Did the court err in rejecting the proof that the defendant in execution died before the sale? We think not. The judgment for cost was made a special lien upon the property divided. It was a judgment *in rem,* and the land in question was subject to the payment of the lien, whether the defendant was dead or alive. Besides, under the laws of this state, land is subject to the payment of debts before it can descend to the heirs at law.

But in any view of the law, the fact which the defendant below proposed to prove, could not invalidate the sale. He did not propose to show that the defendant was dead at the issuing and attestation of the writ. The proof applied

Sprott *v.* Reid.

merely to the date of sale, and of course could have no application to the time when the execution issued, nor to the authority exercised by the sheriff under the writ. 7 Blackf., 156; 4 Howard, 80; 4 Washington, C. C., 6.

We conclude, then, that the court was justified in rejecting the proof, because it could not affect the validity of the sale.

4. As the valuation law was in force at the date of the execution, and as under that law the sheriff was only authorized to sell property at two-thirds its appraised value, it is claimed that the sale, having been made without regard to that law, was unauthorized and void.

The record shows affirmatively that the property was not sold under the valuation law; and the question arises was the judgment under which the sale was made, in any way removed from the provisions of that law? If not, the sheriff had no authority to sell the land for less than two-thirds its appraised value; and as the record shows that he sold it at a mere nominal price without regard to value or valuation, the deed must be regarded as absolutely void. The only question to be decided in order to determine the application of the valuation law to the execution is, was the judgment obtained on a contract made prior to the 20th of February, 1843. Laws of special session 1844, p 7. This law was passed in order to make the valuation law conform to the constitution of the United States, by not "impairing the obligation of contracts."

If the judgment for cost was a contract such as the constitution contemplates, a sale according to valuation was not necessary.

According to 1 Bouvier's Law Dictionary, 353, § 9, "a judgment is an express contract of the highest obligation." See also, Story on Con., 1, 2; 7 John., 488.

The authorities are conflicting. Lord Mansfield says that "a judgment is not a contract." In 14 John., 479, the court say that a judgment is not a contract in fact.

But it matters not how courts may have viewed the analogy between judgments and contracts. It is obvious that a judgment is not in fact a contract; it is not an agreement or covenant between two or more persons; it is not a mutual promise upon lawful consideration, creating mutual obligations, either executed or executory; it is not an agreement between two or more, to do or not to do a particular thing. A judgment may be the result of a contract, but is not the contract itself.

A judgment or decree by consent, comes nearer to a contract than any other, but even such is only the result of an antecedent contract, liability, or penalty. Where a contract is enforced by judgment, it enters into and becomes a part of the judgment, but still, that judgment is not the obligation of the contract, but is the authorized power under which those antecedent obligations are to be enforced.

True, the relation between a contract and its consequent judgment is very intimate, and still judgments are often rendered where no contract existed. Judgments are rendered for crimes, misdemeanors and torts, and on mere *exparte* liability. It can hardly be claimed that such judgments should be regarded as contracts, and yet those judgments have as much force and validity, as those growing out of contracts.

A judgment is the decision of the court in a civil or criminal proceeding; it is the determination or sentence of the law; but a contract is a compact between two or more persons, and hence a judgment is not a contract at law. It is conceded that they are not the same in fact, but claimed that they are so in contemplation of law. But we find no legal definition applicable to the one that can designate the other. As the same legal definition can in no instance be applied to both terms, they can in no instance become convertible. They are regarded as essentially different in business transactions, in legislation, and in all adjudications. In all statutes affecting them

Sprott *v.* Reid.

they are treated as entirely distinct and different. The one is the result of *private* action; the other the result of the law as determined by an authorized tribunal. The one is produced by the parties in interest; the other is the determination of a disinterested person. The one has to be proved; the other proves itself.

But some judgments are more nearly assimilated to contracts than others. Where a judgment is rendered to enforce the obligation of a contract, it approximates, but still it is not the same; it does not create this obligation; it only creates the authority under which that obligation is enforced.

In a large portion of judgments there is no such analogy; no approximation.

If a judgment is not the result of a voluntary contract, it cannot have the same analogy as that which is ordered to enforce a contract; and hence, the judgment in question can have no such analogy. This judgment was not rendered upon a contract. It was only for costs and charges growing out of a proceeding *in rem*, a proceeding resulting from no personal obligation or contract expressed or implied. The partition proceeded from the accidental relation of the parties from their joint and common interest in the land, and was the consequence of the law upon that relation. The costs were an incident of the partition, and the judgment for costs the result of that incident, and hence it has no affinity to the obligation of a contract.

True, this judgment creates an obligation, but not such an obligation as comes within the letter or spirit of the constitution. It is an obligation imposed by law, and not the obligation of a contract made by the parties.

If a judgment is a contract within the protecting clause of the constitution, as claimed, then it must follow that if rendered under the valuation law, it would be subject to its provisions although rendered upon the obligations of a contract made prior to that law. It would be no less a

contract if rendered subsequent to the passage of the valuation law, and as the old obligations would enter into, and be superseded by the new judgment contract, it follows that this view of the judgment would impair those old obligations, and thus violate the constitution.

We can find no decision that will justify the position urged by defendant in error. There have been many decisions in the supreme court of the United States bearing directly upon this clause in the constitution, but none of them go so far as to make it applicable to any other obligation than that of a contract voluntarily made between parties.

*Bronson* v. *Kinzie*, 1 How., 316, originated in a mortgage contract, and the case turns upon the principle that the rules of law and equity in relation to mortgages, entered into and formed a part of the contract. It refers particularly to the laws in force " when the contract was made, " and has no application to those in force when the decree was rendered.

The same principle prevails in *McCrackin* v. *Haywood*, 2 How., 608.

In 10 Howard 398, it was held that " it must certainly be shown that there was a perfect investment of property in the plaintiff in error by contract with the legislature, and a subsequent arbitrary divesture of that property by the latter body, in order to constitute these proceedings " an act impairing the obligation of contract." If we adhere to that rule and apply the analogy to transactions made by individuals, we must arrive at the conclusion, that unless obligations are created by contract within the legal acceptation of that term, they are not protected under the constitution; and as a judgment creates no such obligation, it cannot come within the rule.

But it is contended that if a judgment is not a contract, the sale under the execution would still be valid, even if

Sprott *v.* Reid.

there was no valuation as required by statute ; and authorities are cited in support of this position. We readily concede that if the record in this case was silent in relation to the valuation and sale at the price provided by law, that it might well be presumed the officer had done his duty and had made a valid sale. But the record in this case expressly shows the contrary. It shows that there was no valuation, and that the sale was not according to appraisement. The statute inhibits the sheriff from selling property at less than two-thirds its appraised value. That is made an express condition upon which depended the power of the sheriff to sell. This valuation clause was enacted to protect execution debtors from a ruinous sacrifice of property. It would be subversive of that intention and an outrage upon the rights of such defendants, to decide that it was not necessary to sell the property agreeable to the valuation required by law.

That this matter of valuation under such a law is not merely directory, but a question of power on which depended the validity of the sale, is abundantly shown by the authorities. 3 How., 713; 6 ib., 21; 7 ib., 178; 2 Mass., 154; 14 ib., 28; 3 New Hamp., 46; 2 Black., 1; 1 Gil., 307.

As the record in this case shows that the property in question was sold at a mere nominal price without regard to valuation, and as the judgment was not rendered upon the obligation of a contract, we conclude that the court erred in deciding the legal title to be in the plaintiff below.

Judgment reversed.

*Geo. C. Dixon*, for plaintiff in error.