### SARAH HILL *v.* TOBIAS KESSLER.

The provisions of the State Constitution giving a Homestead and other Exemptions, apply to pre-existing contracts, as well as to such as were entered into afterwards; and do not thereby violate the provisions of the Constitution of the United States in regard to the obligation of contracts.

PEARSON, C. J. *dissenting.*

(*Dean* v. *King*, 13 Ire. 20; and *Jacobs* v. *Smallwood, ante* 112; cited and approved.)

RULE upon plaintiff, heard by *Cloud, J.,* at Spring Term 1869 of the Superior Court of Rowan.

The plaintiff had sued the defendant to Fall Term 1867 of that Court, and for the prosecution of his suit had given bond, on the 3d day of August 1866, with one Hodge as surety. At Spring Term 1869 this rule was obtained, to show cause why

other and better security should not be given, upon an affida-vit that Hodge, since the preceding Term had had his home-stead and personal property exemption laid off in pursuance of Art. 10, of the State Constitution, "and now has no property either personal or real, which is not embraced in the exemp-tion as aforesaid."

His Honor being of the opinion that the exemption in the Constitution did not apply to a contract created before the adoption of that Constitution, discharged the Rule; and the defendant appealed.

*Blackmer & McCorkle*, for the appellant.
*Boyden & Bailey, contra.*

READE, J.  The question involved in this case is, whether the provision in our State Constitution exempting certain property from execution sale, impairs the obligation of pre-existing contracts.

The provision in the Constitution is as follows:

Art. X, Sec. 1. The personal property of any resident of this State to the value of five hundred dollars, to be selected by such resident, shall be and is hereby exempted from sale under execution or other final process of any Court, issued for the collection of any debt.

SEC. 2. Every Homestead and the dwelling and buildings used therewith, not exceeding in value one thousand dollars, to be selected by the owner thereof &c., shall be also ex-empted."

There has been suitable legislation to carry out said pro-vision.

We concede that if this exemption impairs the obligation of contracts, either expressly or by implication, it is against the Constitution of the United States, and therefore void.

The obligation of a contract is the duty of its performance according to the terms thereof. Any act which alters its terms, or enables either party, without the consent of the other, to alter or evade its terms, impairs its obligation, and is there-fore void.  A promises to pay to B $100 on a given day. An

act requiring him to pay a day earlier, or allowing him to pay a day later, would alter the terms as to time, and impair the contract. So an act requiring him to pay $101, or allowing him to discharge the debt with $99, would alter the terms as to the amount, &c.

We concede, also, that a contract must be understood to be made with reference to existing laws for its enforcement. And if, at the time of the contract, there are laws in exis-tence for its enforcement, it is the same as if the State were to say to the parties, there are now and so there shall continue to be, laws to enable each party to enforce the contract. And after such assurance, if the State abolish, or injuriously change the remedy, it would be violative of the Constitution of the United States, and therefore void.

The contract in this case was made before the constitutional exemption, and, therefore, when the debtor agreed to pay the creditor a certain sum, we are to enquire what was the remedy for the enforcement of that contract?

It was to sue him, get judgment, issue a *fi. fa.*, levy upon and sell such property as he might have subject to execution. Observe, not levy upon and sell any particular property, or all he might have; but only such as might be *subject to execution*. What is his remedy now under the Exemption Law? It is to sue him, get judgment, issue execution, levy upon and sell such property as he has subject to execution. What is the difference in the remedy then and now? There is not only no injurious alteration, but there is no alteration at all, so far as the proceedings are concerned.

It was formerly the case that, when a creditor got his judgment he had two remedies; one, the levy upon and sale of property, and the other, the imprisonment of the debtor. The Legislature abolished the remedy by imprisonment, which often brought the money when nothing else would, leaving only the remedy against the property. And then it was contended that the abolishment of the remedy of imprisonment, impaired the contract. But the Courts, in repeated cases, decided otherwise. The true import of the law being, not

that the parties should have any particular or specific remedy, but a substantial and convenient one. In what way does the Constitutional exemption alter or impair the contract which these parties made? How is the remedy changed? What was the law at the time of the contract, and which became a part of it? Was it that all or any portion of the property which the debtor had at the time of the contract, should be liable to execution sale? Was that the creditor's security for his debt? Certainly not. The contract was personal and was a lien upon nothing. Else, how would it be if the debtor had no property? Or if he had any, how would it be, if he should sell it? Or, how would it be with property acquired after the contract? Or how, if a subsequent and more vigilant creditor should get ahead, and take the whole in execution? Or, in case of the debtor's death, how would the widow get dower, or a year's provision? Or, how would funeral expenses have the preference over all other debts? These considerations make it plain, that no such element enters into the contract, as, that any particular property which the debtor has at the time of the contract, or which he may subsequently acquire shall be liable to execution, sale, &c., or that any particular remedy is guaranteed. The guaranty is: that the contract shall never be altered by law, and that there shall be a remedy to enforce it: and the contract is made, not only with reference to the remedy existing, but also to such reasonable changes, as the interests of society require, and the State may think proper to make.

Against this view, it is contended, that there are express decisions to the contrary. If there be such by the Courts of our sister States, they are entitled to respectful, and if by the Supreme Court of the United States, or by our own Court, they are entitled to the highest consideration.

The cases most pressed upon our attention in favor of the creditor are *Bronson* v. *Kinzie*, 1 How. 311, and *McCracken* v. *Haywood*, 2 How. 608, both decided by the Supreme Court of the United States. *Bronson* v. *Kinzie*, was a case where it was provided in a mortgage deed, that if the money

secured was not paid at a given time, the mortgagee might enter and sell; and the Legislature of Illinois passed an act to the effect that the mortgagee should not enter and sell, as the contract said he might, but that he might enter and sell, upon certain conditions, not specified in the contract. This was clearly an alteration of the contract, and impaired its obligation. *It changed the contract of the parties.* But, how is the contract changed in our case? Not at all. It stands word for word, as the parties made it. And so too, the remedy, as we have seen, stands word for word.

The other case, *McCracken* v. *Haywood*, arose under an act of the Legislature, which allowed the contract to stand, and the remedy to stand, except that it provided, that when the property levied on should be offered for sale, it should not be sold unless it brought two thirds of its appraised value. The property was offered for sale and would not bring the price. What, then, was the Court to do? The act applied to all the property the debtor had, and to all he might ever acquire. So that, whether he had much or little property, it could not be sold, and by no possible means could the creditor make his money. Clearly here was a deprivation of all remedy. But, how is it in our case? The exemption does not cover all, but only *so much* of the debtor's property, and does not exempt his future acquisitions. It does not clog the execution sale with unusual terms, which was the ground upon which *McCracken* v. *Haywood* was decided, but leaves it unembarrassed. And if it should happen, as in our case, that all the debtor's property falls under the execution, it was not within the purview of the Constitution that it should, but is only the " *accident,*" of the debtor's property, and does not affect the law. In the case of *McCracken* v. *Haywood*, the Court ordered the property to be sold for what it would bring, as the *only* remedy left to the creditor:

Our attention was called also to an elaborate opinion of Judge Carpenter, of the Circuit Court of South Carolina, *Purcell* v. *Whaley*, reported in the newspapers, declaring the exemption laws of South Carolina, which are substantially the same as ours, unconstitutional

and void. The authorities relied on by the learned Judge were, among others of less importance, the aforesaid cases of *Bronson* v. *Kinzie* and *McCracken* v. *Haywood;* and we have seen they do not sustain him.

Another case cited by him, and directly in point for him, is *Dank* v. *Quackenbush,* 3 Denio 594, decided first by the Supreme Court, and then by the Court of Appeals of New York. But the attention of the learned Judge was not called to the fact that, in that case, the Judges in the Court of Appeals were equally divided, and, therefore, the decision in the Court below stood; nor to the more important fact that, in a subsequent case, in 1854, in the same Court, *Morse* v. *Gould,* 1 Kernan 281, the case of *Dank* v *Quackenbush* was reviewed and overruled. Again, the case before Judge Carpenter did not involve the point whether the Exemption Laws impaired the obligation of contracts, and, therefore, his opinion upon that question is only a *dictum.* He states the principles involved in the case as follows: " The judgment was by law a vested right, a lien, a contract. Had the State the Constitutional power to divest the plaintiff of his right, and vest them in the defendant ? Upon the principles involved in the case, there is no difference between rights by mortgage, and by judgment; the former are specfic the latter general; but both are vested, legal rights," &c. It will be seen, therefore, that the question involved,was not that of impairing the obligation of contracts under the Constitution of the United States, but of destroying liens and invading vested rights, under the Constitution of South Carolina. There is nothing, therefore, in that decision against our position, but the *dictum* of the learned Judge; for it is not pretended that in our case there was any lien or vested right. We are not, therefore, interested to inquire further into the learned Judge's decision, that "liens" and "vested rights" cannot be abolished by the State Convention in framing their organic law.

Our attention was called also to a decision of Judge Orr, of the Circuit Court of South Carolina, reported in the newspapers, sustaining the South Carolina Exemption Laws.

We are not aware of a single decision, except as before

stated, either in the Courts of our sister States, or of the United States, in which general exemption laws have been held to be an infringement of the Constitution of the United States. There being no decision against them, let us see if there are any in their favor.

The Legislature of New York, in 1842, passed an act, exempting from execution, in addition to former exemptions, "necessary household furniture, working tools and team, not exceeding $150 in value." The creditor obtained a judgment upon a debt existing before the act, and levied on the debtor's team, a pair of horses, and the question was, whether the exemption was good against pre-existing debts. The opinion of the Court was elaborate and able, and that the exemption was good—*Morse* v. *Gould, supra.* The opinion is the more important, as it reviewed and overruled a former case in the same Court, *Dank* v. *Quackenbush*, cited by Judge Carpenter.

It also reviewed the cases of *Bronson* v. *Kinzie*, and *Mc-Cracken* v. *Haywood*, and indeed all the cases bearing on the subject, and distinguished them from that, as we have from this. In a late case in 9 Wisconsin, 559, *Baumbach* v. *Bade*, the case of *Morse* v. *Gould, supra*, is reviewed and approved. And in *Bronson* v. *Kinzie*, Taney, C. J., says: "A State Legislature may, if it think proper, direct that the necessary implements of agriculture, or the tools of a mechanic, or articles of necessity in household furniture, shall, like wearing apparel, not be liable to execution on judgments; and regulations of this kind have always been considered in every civilized community as properly belonging to the remedy, to be exercised or not, by every sovereignty, according to its views of policy or humanity. It must reside in every State to enable it to secure its citizens from unjust and harassing litigation, and to protect them in those pursuits, which are necessary to the existence and well being of every community."

And in a subsequent case, *Planter's Bank* v. *Sharp*, 6 How. 301, Mr. Justice Woodbury, in delivering the opinion of the Supreme Court of the United States, enumerated exemption laws, among the examples of legislation, which might be

constitutionally applied to existing contracts. And in *Bigelow* v. *Pritchard*, 21 Pickering, the Supreme Court of Massachusetts decided that the Legislature might lawfully diminish the creditor's remedy to enforce judgment, by exempting a part of the property of the debtor from attachment on mesne process, or levy of execution; for example, articles of furniture, bed and bedding, &c., necessary for a debtor and his family. And in *Morse* v. *Gould, supra,*, it is said that general exemption laws are valid, "though a case might happen, possibly, where the exempt property would constitute all that the debtor possessed." And in a late case, *Stephenson* v. *Osborne*, 41 Miss. 119, reported in the April number of the American Law Review, p. 476, the Supreme Court of Mississippi decided that the Mississippi exemption law "was constitutional as to contracts existing at the time of its passage." We have a decision of our own Court directly in point. In *Dean* v. *King*, 13 Ire. 20, the Court decides, Ruffin, C. J. delivering the opinion, that the exemption of "a mare and five hogs," under the act of 1848, was good against a debt contracted in 1846.

The case of *Dean* v. *King* was this : The exemption laws of 1844 applied to debts contracted after 1st July, 1845, and it was insisted that the debt in that case was *contracted* before 1st July, 1845, although the bond for the contract was not executed until 1846. The Court said the exemption was not made under the law of 1844, because " a mare " was not embraced in that law, but was made under the Act of 1848, and that it was valid. It is true that it does not appear that it was objected, that the Exemption Act of 1848 could not apply retrospectively, but it could not have escaped the attention of the Court, nor of the two eminent counsel who argued the case, that an exemption law of 1848, applied to a debt of 1846, did operate restrospectively as to the debt affected by it.

We have, too, our legislative construction, and the practice of our Courts under it, for the last twenty years. The Revised Code, adopted in 1856, makes the exemption of "one cow and calf, ten barrels of corn or wheat, fifty pounds of bacon, beef or pork, or one barrel of fish, all necessary farm-

-ing tools for one laborer, one bed, bedstead and covering for ·every two members of the family, and such other property as the freeholders may deem necessary for the comfort and support of such debtor's family; such other property not to exceed fifty dollars," apply to all debts contracted since July 1st, 1845. It is true that, by the Act of 1844, some of these Articles were exempted, but the bulk of them were not embraced in any exemption act until 1848, and yet they were made to apply to debts as far back as July 1st, 1845.

So in 1866–'67, our Legislature passed an Act exempting "All necessary farming and mechanical tools, one work horse, one yoke of oxen, one cart or wagon, one milch cow and calf, fifteen head of hogs, five hundred pounds of pork or bacon, ·fifty bushels of corn, twenty bushels of wheat, and household ·and kitchen furniture, not exceeding $200 in value." And this was not restricted to subsequent contracts. Which is the more significant, as by the same Act a Homestead of ·one hundred acres without regard to value, was restricted to ·subsequent debts. So that exemptions applying to antece-·dent debts have had the sanction of our Legislature and of this Court, and of the practice of all the Courts, for the last twenty years.

But then it is said that while that may have been so in regard to *necessaries*, yet our exemptions are too large; they are not necessaries. If it be conceded that the Legislature has power to exempt any thing as to existing debts, then what are necessaries, is a question for the Legislature and not for the Court. But our exemption laws heretofore have not been restricted to mere necessaries, but have looked to the "comfort and support of the debtor's family," Revised Code, *Supra;* and the exemptions have been repeatedly and considerably increased, to keep pace with the change of manners and customs, and the condition of our people. It will readily appear that the late exemptions of personal property, in many instances, might greatly have exceeded $500. If the Legislature can exempt personal property, it is not pretended that it may not in like manner exempt real estate—a homestead.

It is objected that the Homestead law ought not to be con-

29

strued to operate restrospectively. We admit that this is the general rule of construction; with an exception, however, in favor of remedial and, as sometimes called, beneficial laws. All our laws in regard to remedies and procedure have been lately altered by the new Code of Civil Procedure, and made to act retrospectively. No debt, no matter when contracted, can be sued for and recovered now as before the Code. Even the Courts themselves have been changed.

By the act of 1808, a summary remedy, by motion for judgment on ten days' notice was given against Sheriffs for collecting money and failing to pay over. A motion was made against a Sheriff for an antecedent liability. It was objected that the act did not operate retrospectively. But this Court held the contrary, saying that, "when an act takes away from a citizen a *vested right*, its constitutionality may be inquired into; but when it alters the remedy or mode of proceeding as to rights previously vested, it certainly runs in a constitutional channel. These acts are beneficial and should be favorably construed." *Oats* v. *Darden*, 1 Murphy, 501.

So a State Legislature may discharge a party from imprisonment upon a judgment in a civil action, without infringing the Constitution; for this is but a modification of the remedy; 3 Story on the Con. 251, *Mason* v. *Hiate*, 12 Wheaton, 370.

A Statute changing the rules of evidence may be applied to pending suits. Cooly, Con. L. 381.

So a statutory privilege is not a vested right; as exemptions of persons or property from taxation, or exemptions of property from being seized by attachment, or execution, *Ib.* 383.

So homesteads, or other property which are now exempt under the Constitution, may be made liable by a subsequent Convention, *Ib.* N.

If, therefore, the homestead laws were not retrospective *in terms*, yet, as they are remedial, beneficial laws, interfering with no vested rights, and are a part of the fundamental law of the land, they ought to be liberally construed in favor of the person to be benefited. But we think they do not depend upon *construction*. The plain words are that they shall apply to " any debt "—all debts. And it is only by construction,

and we think an erroneous construction, that they can be restricted to any particular class of debts.

But really the homestead and exemption laws, although affecting antecedent debts, are not retrospective in the proper sense of that term. What would be a prospective homestead law? Evidently that which should allow a homestead *to be laid off hereafter*. What, as contra-distinguished from that, would be a retrospective homestead law? Evidently that which makes valid a homestead which *has been laid off heretofore*. The great error is in supposing that the homestead law is a law to defeat debts. That is no part of the object of the law. The laying off a homestead is the sole object, and is prospective altogether. If any debt is affected by it, it is merely incidental. It may be conceded, therefore, without affecting the homestead, that any law, the purpose of which is to defeat a debt, is void. But the homestead law declares its object upon its face to be, not to defeat debts, but, to allow to every resident of the State, "and his children," and his "widow," a home, and the means of living, if they have them. It is a question, not of defeating debts, but, in the language of Chief Justice TANEY, "it is a question of policy and humanity, which every civilized community regulates for itself."

Its wisdom or folly, justice or injustice, is a question for the law making power, and not for the Courts. In our case, the law has the sanction of the Convention and of the Legislature, and of the direct vote of the people in adopting the Constitution, and of the Congress of the United States which approved the Constitution. And, as it is not in contravention of the Constitution of the United States, it would be an assumption of extraordinary power for us to declare it void.

With the policy of these exemptions this Court has nothing to do. If they are within the power of the Legislature, then it is sufficient for us that, " thus it is written."

We have not thought it necessary to notice the suggestion, that inasmuch as the sale of lands under the execution is by Statute, so it may be exempted by Statute.

No question arises in this case as to the interference with

vested rights under our State Constitution, because the exemption is a provision in the Constitution itself. The only question is, whether it impairs the obligation of contracts, under the Constitution of the United States. We think it does not. *Jacobs* v. *Smallwood, ante*, 112. This will be certified, &c.

RODMAN, J. I concur in the conclusions of a majority of the Court—but not entirely in the reasoning of the Opinion of my learned brother, Justice Reade. I prefer to rest my judgment on the course of reasoning followed by me heretofore, in my Dissenting Opinion in *Jacobs* v. *Smallwood, ante* 112; that is to say, upon the ground that the Homestead Act affects *the remedy* merely, and that *the remedy* (except in certain extreme cases adverted to in that Opinion) is wholly within the jurisdiction of the States.

PEARSON, C. J., *dissentiente.* The express prohibition of *"ex post facto* laws" is confined to criminal offences, but the broad principle of justice on which it rests extends as well to civil rights, and it is a settled rule of construction that a retroactive effect is never to be given to a law, unless the words used admit of no other meaning, and show beyond question that past transactions are within its operation. "General and vague words have never been allowed to have that effect." Broom's Legal Maxims, 41.

In our case the words, in the Constitution, are, shall be exempt from sale under execution "for any debt." Very comprehensive, but at the same time very indefinite. The statutes carrying out this ordinance adopt the same words without explanation. Giving to them the meaning of "any debt" hereafter contracted there is no injustice, for people will know who is to be trusted; giving to them the meaning of any debt, as well debts heretofore as debts hereafter contracted, there is gross injustice, and a violation not only of the ordinary notions of honesty, but of a fixed principle of the common law, reaffirmed by statute law, 13 Elizabeth, "All gifts and voluntary conveyances of his property by a debtor are void as

against existing creditors," on the ground of *fraud.* I hesitate to give to these indefinite words a construction which imputes to the law makers a fraud in this; it makes a gift or voluntary conveyance to the debtor himself, in fraud of existing creditors, of property, on the faith of which he received credit, and of which he cannot by law make a voluntary conveyance to another. Courts are to be governed not by what the draftsman of a law is supposed to have meant, but by what the words used mean, according to the settled rules of construction. This maxim should especially be adhered to, when the law is submitted to a vote of the people, for it is not decent to suppose that indefinite words were used, that some might vote for it giving one meaning, and others another.

II. "No State shall pass any law impairing the obligation of contracts." These comprehensive words are not confined to a prohibition against altering the terms of a contract, but, also forbid impairing its obligation. What is the obligation of a contract? The means of compelling performance, according the laws in force, at the time the contract is made ; by these laws the parties agree to abide; by these laws their rights are fixed. This is the obligation which must not be impaired by a State, whether acting in Convention or in General Assembly.

We are told : "There are now, and so there will continue to be, laws to enable each party to enforce the contract, and after such assurance, if the State abolish, or seriously change the remedy, it would be in violation of the Constitution of the United States, and therefore void."

In this I fully concur, and the question is—not confusing the subject with a multitude of cases or with many words—does or does not, the "Homestead exemption" of $500, personal property and $1,000 value of land, injuriously change the remedy, and alter the laws in force at the time the contract was made. In other words, is not the *obligation* of this contract impaired by the Homestead exemption ? It is set out in the record, that besides the property exempted this debtor has nothing. So the contract cannot be enforced, and its obligation is *destroyed*, not simply impaired.

It is said, "the remedy is not at all changed, for the creditor can take judgment and issue a writ of *fieri facias*, just as he could have done when the contract was made." All this is very true, and it is equally true, that in nine cases out of ten the Sheriff will return on the *fieri fiacias*, "nothing found except property exempted by homestead law." This is the shadow, but not the substance. The creditor trusted to the property which the debtor had, at the time of the contract, as the means of enforcing it, and to that law by which a voluntary conveyance is declared fradulent and void—that was the obligation, or the thing that binds—and yet it is held, as I think under the unconscious bias of pressing circumstances, that a law which bestows. this property on the debtor, to the injury of existing creditors, does not impair the obligation of contracts.

It was urged on the argument: By the common law, wearing apparel, arms for muster, tools of a tradesman, and a bed and furniture, are exempted: (and these articles were not looked to and were not included in the obligation,) then, by Statute, certain other articles, i. e., Bible, hymn book, and school books, and finally a horse, not to exceed in all the value of $200, were exempted. Now, because creditors did not choose to make a point about these small matters, that is relied on as fixing the power of the General Assembly to make exemptions against existing debts; and the power being thus established, the extent of its exercise is a matter of legislative discretion! "Give an inch, and take an ell!" First, assume the power to exempt a Bible, hymn book and school books; then a horse may be added, then $200 worth of property, then $500, then $1,500 including land, then $5,000, and then exempt everything, for there is no limit, save Legislative discretion! Indeed, the Statute under consideration, I believe, exempts every thing owned by debtors, in nine cases out of ten.

In reply to the argument drawn from Legislative sanction, one fact counterbalances the whole. In 1822, the Legislature deemed it wise to modify the law of imprisonment for debt as an obligation of contracts. After full discussion the act pro-