LEWIS MARTIN, Assignee *vs.* THOMAS H. HUGHES,

Under article 10 of the Constitution, and the act of 1868–'69, chap. 137, a homestead may be laid off in two tracts of land not contiguous. The two not exceeding $1,000 in value.

There is nothing in the Constitution forbidding the General Assembly from enlarging the homestead. It cannot reduce what the Constitution provides, but any General Assembly has the same power which the constitutional convention had, to exempt a homestead, and has absolute power to enlarge the homestead given by the Constitution in the matter of value or duration of estate, subject only to the restriction in the Constitution of the United States, that it shall not thereby impair the obligation of contracts.

[The case of *Hill* v. *Kesler*, 63 N. C. 437, cited and approved, and fully discussed by Rodman, Judge.]

This was a civil action, tried before *Tourgee, J.,* at Spring Term of ORANGE Superior Court, to recover from the defendant, the Sheriff of Orange County, the penalty of $100 for not selling certain lands, the property of William W. Allison.

The facts stated in the complaint and admitted in the answer of the defendant appear to be as follows :

At Spring Term, 1867, of Person Superior Court, plaintiff obtained a judgment against John J. Allison and William W. Allison for the sum of $400, with interest from May 1st, 1862. This judgment was properly docketed in Orange County in January 1870, and execution was issued thereon 18th July, 1871. When the execution was placed in the hands of the Sheriff he received the following special instructions: "Levy this execution on a tract of land known as Piney Woods, the property of William W. Allison, and sell the same, as this tract does not adjoin the homestead of Allison and he is not entitled to have this tract assigned to him as a part of his homestead."

Other executions had been issued upon judgments obtained by other creditors prior to the docketing of plaintiff's judg-

ment, and were made returnable to Spring Term, 1870, of Orange Superior Court.

Under these executions, William W. Allison had laid off and assigned to him, as a homestead, a tract of land on which he resided called Cedar Grove, and another tract called Piney Woods, which was not contiguous to the former tract, but three miles distant therefrom. The two tracts were valued at $1000. The defendant (Sheriff) levied plaintiff's execution upon the Piney Woods tract, but returned the execution to Court without a sale of the land. A *venditioni exponas* was placed in the hands of the Sheriff with instructions to sell the land called Piney Woods. He did not sell but made return : "No sale of the land levied on, as the defendant, William W. Allison, claims the same as a part of his homestead, allowed to him heretofore and guaranteed by the act of 1868-'69, ch. 137, sec. 15."

Upon this statement of facts, his Honor gave judgment against the defendant for the sum of $100, " as for a contempt of Court in not executing the process in his hands." From this judgment the defendant appealed to the Supreme Court.

*J. W. Graham* and *Moore & Gatling*, for plaintiff.
*Phillips & Merrimon*, for defendant.

RODMAN, J. This is an action to recover from a sheriff the penalty of $100 for not selling certain lands, the property of William W. Allison. The plaintiff in 1867, recovered judgment against Allison upon a debt contracted in 1862, and having duly docketed his judgment issued a *fieri facias* to the sheriff, with special instructions to levy on and sell the land called Piney Woods. The sheriff levied but did not sell. Afterwards a *ven. ex.* was duly issued with instructions to sell, but the sheriff refused to sell, and returned that the land was claimed by Allison as a part of his homestead. It appears from

the pleadings that previously to the issuing of the plaintiff's *fi. fa.*, some other creditor of Allison had obtained execution against his property, and that thereupon a homestead had been laid off for him consisting of a piece of land called Cedar Grove, upon which he resided, and of this piece called Piney Woods, which was three miles distant from the first piece. It does not appear whether or not Allison occupied Piney Woods. Occupancy may be different from residence; one may occupy a piece of land by cultivating it in some annual crop, or by continuously getting timber, or fuel, or making turpentine upon it. Numerous cases have held that such occupancy is a possession which will ripen a colorable title.

Probably it was not material to state this; but certainly good pleading would have required the present defendant to set forth the record of the assignment of Allison's homestead, upon which he justified, so that the Court could see whether or not it was a justification. As the judgment of the Judge went upon a general ground we pass that over. We pass over also the question, which may admit of some doubt, whether a *penalty* can be recovered against a public officer who obeys an Act of the Legislature which turns out to be unconstitutional; and proceed at once to meet the question made in the Court below, and upon which his Honor passed. His opinion was that inasmuch as Allison resided on Cedar Grove, and Piney Woods was not contiguous, but three miles distant, the assignment of the latter tract as a part of his homestead was void as to the latter tract against a debt contracted prior to the ratification of the *act of* 1868–'9, *ch.*, 137.

The act referred to in sec. 1, enacts, that whenever the real estate of any resident of the State shall be levied on by virtue of an execution obtained on any debt, such portion thereof as may be occupied by the owner as an actual homestead, and which he may then elect to regard as such, including the dwelling and buildings thereon, shall be exempt from such levy,

except under an execution issued for the collection of a debt contracted, &c.

Section 15, enacts: " Different tracts or parcels of land not contiguous may be included in the same homestead, when a homestead of contiguous lands is not of the value of one thousand dollars."

There does seem to be some variance in the ideas which are contained in these two sections; but there is no absolute contradiction such as will compel the sacrifice of one to the other. Section 1, relates to the case where the homestead value is reached in one or in several contiguous tracts. Section 15, to a case where it is not so reached, then non contiguous tracts may be included to make up the value, and the act of course implies that one of the tracts need not be actually resided on, and it does not require that it shall be occupied otherwise than by construction from the ownership which implies a possession in the absence of an actual adverse one.

The opinion of his Honor, however, seems to be that Section 15 is void only as to debts contracted before its ratification. He seems to have thought that the provision of the Constitution (Art. X Sec. 2), which exempts a homestead " with the dwellings and buildings used thereon, and occupied by any resident of this State, and not exceeding the value of one thousand dollars," contemplated a homestead in a single tract or in contiguous tracts only. Suppose that it did; there is nothing in that, or in any other section of the Constitution, to forbid the Legislature from exempting a larger homestead. It cannot reduce what the Constitution provides, but any General Assembly had the same power which the Constitutional Convention had to exempt a homestead, and has now absolute power to enlarge the homestead given by the Constitution in the matter of value or duration of estate, subject only to the restriction in the Constitution of the United States that it shall not thereby impair the obligation of contracts. That restric-

tion applies with the same force to the Convention that it does to the General Assembly, and the homestead article in the State Constitution would undoubtedly have been held void as to prior contracts, if it had been supposed to have impaired their obligation. It was earnestly contended that it did, but this Court, in *Hill* v. *Kesler*, 63 N. C. 437, came to the conclusion that it did not, either in intention or effect

This decision has since received general acquiesence, and Congress has recently adopted its principle by an amendment to the bankrupt law, which gives to the bankrupt all the ex· emptions allowed by the State law in force in 1870. The same course of reasoning which sustained the exemption in the Constitution against debts prior to it, would sustain the additional exemption (if we admit it to be an additional one) made by the Act of 1868–'69, against debts prior to it. Supposing the meaning of the Constitution to be what his Honor seems to have supposed it, the Act of 1868–'69 seems rather to be a legislative construction of it, and, by no means, a forced one, than an addition to the exemption it allowed. The value still cannot exceed $1,000, and if it be admitted, as upon authority it must be, that the creditor is not injured by an exemption in contiguous tracts, what reason can there be for holding that he is injured by allowing one to no greater value in tracts not contiguous. The policy of the law can hardly be made to depend on the debtor's owning to the value of $1,000 in a single tract, or in several detached ones, and certainly the in· jury to the creditor must be by the value exempted, and not by the land being aggregate or detached.

We do not mean to be understood as saying that the principle established in *Hill* v. *Kesler* would sanction any great extension by the Legislature of the present exemption, either in value or in the duration and quality of the estate. It might be seen that such an extension was manifestly intended to, and did in effect, impair the obligation of contracts, in which case

it would be void.   We only mention this to avoid being mis-understood.

We think the justification sufficient.

Judgment reversed, and judgment in this Court in favor of defendant.

Per Curiam.                                    Order reversed.