## THE STATE OF IOWA.

DES MOINES, JUNE TERM, A. D. 1859.

In the Fourteenth year of the State.

---

PRESENT:

HON. GEORGE G. WRIGHT, Chief Justice.
" WM. G. WOODWARD, } Justices.
" L. D. STOCKTON, }

---

## Fanning v. Kerr.

The first section of the act entitled "An act concerning the foreclosure of mortgages, and amendatory of chapter 118 of the Code," approved February 25, 1858, was not intended to interfere with the contract of parties, nor to prohibit them ; nor does it take away the force of section 2097 of the Code.

·The act entitled "An act concerning the foreclosure of mortgages, and amendatory of chapter 118 of the Code," approved February 25, 1858, only intended to take away the summary foreclosure of mortgages by the sheriff, without action, as provided by chapter 118 of the Code.

Fanning v. Kerr.

The proviso in the first section of the act relating to the foreclosure of mortgages, approved February 25, 1858, is not to be restricted to that which may be strictly and technically a trust-deed.

In view of the statute, an instrument is equally a deed of trust, or one containing or conferring a trust, whether it be for the grantee's own benefit, or for that of another.

A conveyance of real estate, to secure the payment of a sum of money, which confers upon the grantee the power to sell and convey the premises, upon the non-payment of the money due, and provides for the application of the purchase money, constitutes a trust deed, and the grantee becomes the trustee of the grantor.

Where F. and wife, to secure to K. the payment of a certain sum of money, at a specified time, conveyed to the said K. in trust, certain real estate, with a proviso that if the said F. failed to pay said sum of money, or any part thereof, when due, the said K. was authorized, after having given ten days notice by publication in a newspaper, to proceed to sell the said premises, at the court-house in Dubuque, to the highest bidder, making a deed therefor to such purchaser, and out of the proceeds of said sale to pay what remained unpaid of said indebtedness, and hold the surplus to the order of said F.; and where, on the failure of the said F. to pay said sum of money, when the same became due, the said K. advertised the said premises for sale, according to the terms of the conveyance, and thereupon the said F. filed his bill in equity, praying an injunction to restrain K. from selling under the conveyance, except by virtue of a civil action brought in the proper court, which injunction was issued, staying the sale, and subsequently made perpetual; *Held* That the injunction improperly issued.

*Appeal from the Dubuque District Court.*

MONDAY, APRIL 4.

On the 15th of May, 1857, Timothy Fanning, with his wife releasing dower, executed and delivered to J. P. Kerr an instrument of the purport following: That the grantors, in order to secure to the grantee the payment of the indebtedness hereinafter described, do hereby sell and convey unto the said J. P. Kerr, in trust, the following premises, to-wit: Lot number two hundred and twenty-nine in the city of Dubuque, on condition that the said Fanning is indebted to said J. P. Kerr, in the sum of three thousand nine hundred dollars, payable in one year from date, according to the terms of a promissory note of

even date. Now if said Fanning fail to pay said sum, or any part thereof, when due, the said Kerr shall, after having given ten days notice by publication in a newspaper, proceed to sell at the court house in Dubuque, to the highest bidder, making a deed therefor to such purchaser of the above described real estate; and out of the proceeds of such real estate, shall pay what remains unpaid of said indebtedness, and hold the surplus to the order of said Fanning; but if said Fanning pay the indebtedness when due, then this conveyance to be void.

In default of payment, Kerr advertised the lot for sale, as above provided, when Fanning filed his bill in equity, praying an injunction to stay him perpetually from making sale in this manner, and except by virtue of a civil action brought in the proper court. He also sets up usury in the contract. An injunction was granted, staying the sale, and the district court afterwards decreed it perpetual. The respondent appeals.

*John L. Harvey*, for the appellant.

I.   The plaintiff cannot have relief in a court of equity, on the ground of usury, without first paying, or offering to pay, the principal and legal interest, or sum lawfully due. Hilliard on Mortgages, (2d ed.), chap. 19, secs. 25, 27, E.; *Fanning* v. *Dunham*, 5 Johns. Ch., 142; *Ballinger* v. *Edwards*, 4 Iredell Equity, 449; *Cunningham* v. *Davis*, 7 Ib., 5; *Piersall* v. *Kingsland*, 3 Edw., Ch., 195; 2 Sumn., 402; *Woodward* v. *Fitzpatrick*, 9 Dana, 117; *Ward* v. *Sharp*, 15 Vermont, 115; *Wilson* v. *Hardesty*, 1 Maryland Ch. Decisions, 66; *Carter* v. *Dennison*, 7 Gill, 157; *Ball* v. *Bourdurant*, 7 Monroe, 421; Story's Equity Jur., sec. 64, E.

II.   The contract was such as the parties had a right to make, and was good under the then existing law. 1 Hilliard on Mortgages, chap. 7; 4 Kent's Com., (marg.) 146; Code of Iowa, sec. 2097.

III.   The contract being legal, and binding at the time

it was made, the legislature cannot impair its obligation and the law of 1857–8, so far as it affects mortgages, with a power of sale, is unconstitutional and void; *Bronson* v. *Kinzie*, 1 Howard (U. S.), 311; *McCracken* v. *Hayward*, 2 Ib., 608; *Grantley's Lessee* v. *Ewing*, 3 Ib., 707; *Green* v. *Biddle*, 8 Wheat., 1; *Quackenbush* v. *Danks*, 1 Denio, 128; *Harrison* v. *Stipp*, 8 Blackf., 455; *Stone and others* v. *Green and others*, 3 Hill, 469; *Pool* v. *Young*, 7 Monroe, 588; 4 Kent's Com., marg. page, 434, note; *Burton* v. *Emerson, Shields & Co.*, 4 G. Greene, 393; 1 Kent's Com., marg. page, 419, note b; *Dikeman* v. *Dikeman*, 11 Paige, 484; *Mundy* v. *Monroe*, 1 Mann., 68.

The doctrine of the above cases is, that all effectual remedies, affecting the interests and rights of the owner, existing when the contract was made, become an essential ingredient in it, and are parcel of the creditor's rights, and ought not to be disturbed. In support of this doctrine, it is argued that the laws existing at the time of the contract, being known to the parties, enter into and become a part of the contract, without any express stipulation to that effect—laws relating to the remedy, or the manner in which contracts may be enforced, as well as those which more directly regulate the obligation of the contract. This, we think, to be the better doctrine, and supported by an overwhelming weight of authority. If the laws existing at the time of making the contract, enter into and become a part of it, without any express stipulation to that effect, how much stronger must the case be, where the parties have expressly provided for the manner in which the contract shall be enforced.

Those who contend for a more lax interpretation of the constitution, and are in favor of giving the states unlimited power over the remedy, contend that as the parties to the contract knew at the time of making it, that the legislature had power to change the remedy, they must have tacitly agreed to be governed by whatever laws should be in force when it should become necessary to enforce the contract. Admitting, for the sake of the argument, that

the last mentioned doctrine is correct, it cannot apply to this case, because the reasoning by which it is supported, is inapplicable. It cannot be said, in this case, that the parties tacitly agreed to be governed, so far as the remedy was concerned, by whatever laws should be in force, at the time it should become necessary to enforce it; because the parties have expressly stipulated in the deed, in what manner the contract shall be enforced, thus positively excluding the idea that they tacitly agreed to be governed by the laws in existence at the time the debt should become due.

Another argument by which this latter doctrine is supported is, that "to contend that no change whatever can be made in the proceedings in suits at law, so as to affect an antecedent contract, or cause of action, would be pregnant with mischief and inconvenience; as it would introduce into the courts a variety of modes of proceeding, conforming to the dates of the various matters of litigation, instead of having one general rule adapted to all cases of similar description." 1 Tucker's Commentaries, 3. Admitting the full force of this reasoning, it is not applicable to this case. In this case, we do not ask the court to proceed in a mode which was in existence at the date of the deed, but which is different from the mode now in force. We do not ask the aid of the court at all, in the enforcement of this contract; the parties themselves have provided in the contract for a foreclosure *in pais*, without the intervention of the court, (a provision they had a right to make); and all we ask is, that the court will remove the restraint, and permit us to proceed in the manner stipulated in the contract.

The provision in the deed, that on default in payment, the mortgagee may sell the property, after giving ten day's notice, and pay himself out of the proceeds, is an essential, important, and valuable part of the contract, without which, in all human probability, the defendant would not have loaned the money to the plaintiff. That this provision is highly valuable to the defendant, it is easy to see.

The certainty of obtaining his money promptly when due, is always one of the strongest inducements held out to a person to loan his money. With this provision in the contract, he can realize his money in ten days; without it, he will be compelled to suffer the expense and delay of a suit in chancery. Six months is the shortest time within which he can obtain a decree; four weeks after that, the sheriff can sell; after the sale, (according to the opinion generally entertained by members of the profession), the debtor will have one year to redeem the property; thus making a difference of nineteen months in the time within which the creditor can obtain his money. *Pool* v. *Young*, 7 Monroe, 588.

*Wilson, Utley & Dowd,* for the appellees.

I. John P. Kerr is not a trustee in said conveyance, and from the nature and character of the instrument, cannot be. He is a mortgagee, and nothing more.

1. "A trustee is a person holding the legal title to property, under an express, or implied agreement to apply it, and the income arising from it, to the use, and for the benefit of another person, who is called a *cestui que trust.*" Story on Cont., sec. 296.

2. "A private trustee is one to whom property, either real or personal, has been given to be held in trust for the benefit of others. The legal estate is in the trustee, and the equitable estate is in the *cestui que trust.*" 1 Parsons on Cont., 102 and 103.

3. "A trust is an equitable right, or interest, in property, real or personal, distinct from its legal ownership." 2 Bouvier's Law Dic., 607. "A trustee is one to whom an estate has been conveyed in trust, and such an estate is not subject to the specialty, or judgment debts of the trustee." 2 Bouvier, 607.

4. "Before the relation of trustee can be constituted, there must necessarily exist: 1. A subject matter for a

trust; 2. A person competent to create the trust; 3. One capable of holding property as trustee; and 4. A person for whose benefit the trust property may be held, who is known as the *cestui que trust*." 1 Hill on Trustees, 44.

It is evident from the foregoing authorities, that the *cestui que trust*, or beneficiary, must be some other person or party, distinct from the trustee, otherwise there is no trusteeship, nor trust estate.

5. The authorities also hold, that a mortgagee cannot be a trustee for the mortgagor. " In making the mortgagee entire master of the estate, he is not only invested with the control of his own property, but is also trustee of the equity of redemption, with absolute power to dispose thereof, not exactly for the benefit of his *cestui que trust*, but for his own benefit, so far, at least, as his trusteeship stands in the way of a peremptory, or immediate realization of his money. This is a character incompatible with a trustee; he is not free to act for the exclusive benefit of his *cestui que trust*; he is first to serve his own purpose, regardless of those for whom he stands trustee, and then, having secured himself, he becomes a stockholder, as to the residue, for the mortgagor. This inconsistent character, is the most objectionable feature of the form above referred to, and it appears to have received the censure of the present Lord Chancellor." 1 Hilliard on Mort., 120.

6. The conveyance by Fanning to Kerr, being to secure to Kerr the payment of $2,900, is not such conveyance as would make him a trustee, because there is no *cestui que trust*, or beneficiary, aside from the trustee himself; and without a beneficiary distinct from the trustee, it is impossible to make a conveyance in trust. The conveyance in this case, by Fanning to Kerr, to secure a loan of money, is nothing more than a mortgage, and should, to all intents and purposes, be treated as such. There is but one way to create a trust estate, and that is to vest the legal estate in a trustee, for the benefit, and to the use, of another person.

II.   The conveyance by Fanning to Kerr, to secure the payment of the sum of $2,900, is a mortgage, and being such, the legal title still remains in Fanning, the mortgagor.

1.   " In the absence of stipulations to the contrary, the mortgagor of real estate retains the legal title and right to possession thereof."   Code, section 1210.

2.   The legal title being in Fanning, the mortgagor, there is no mode whatever, by which the title can be got out of him and pass to another, except by absolute deed, executed by Fanning, or by foreclosure of the mortgage by proceedings prescribed by law.   So long as the legal title is not in Kerr, but is in Fanning, no agreement between the parties can confer power in Kerr to take the title from Fanning; and notwithstanding any such agreement, Kerr must proceed in the manner prescribed by statute, in order to convey title to the purchaser.   Because, title to real estate cannot pass from one person to another, except by conveyance by deed, in the manner prescribed by law, or by judicial proceeding; and if Fanning is mortgagor, and Kerr mortgagee, the provision in the conveyance executed by Fanning to Kerr, that he might sell, in default of payment, on giving ten days notice, is substantially the same that is contained in very many mortgages in this state, and is not such authority as can possibly authorize Kerr to convey the legal title, on sale under such notice.

3.   In order to sell the lot, and give legal title to the purchaser under the conveyance, the same should be foreclosed by civil action.   Code, section 2083.   Foreclosure by notice, as was provided in the Code, cannot now be had. The provision of the Code is repealed, and foreclosure cannot be made in any other manner than by civil action. Laws of 1858, 2829.

III. 1.   It may have been intended by the parties to make this conveyance a trust deed, but they failed, for want of a *cestui que trust*, to make it anything else than a common

mortgage on real estate. If there had been any intention on the part of the parties, to make the conveyance in such manner that the premises could be sold on ten days' notice by Kerr, without it being a trust deed, an instrument passing legal title to Kerr would have been executed, for without such title, Kerr could not sell, and make title, except by foreclosure at law.

2. Again: the law of 1858 provides, that after the taking effect of that law, all mortgages shall be foreclosed by civil action. Laws of 1858, 28.

3. That law is constitutional, for it does not, in the least, impair the obligations of the contract. At most, it is only a change of remedy, and cannot even be that, because the legal title is not in the mortgagee. "State legislatures have the unquestionable right to pass laws which operate to control and modify the express or implied provisions of contracts, so long as they do not transcend the limits prescribed by the constitution of the United States.. It is only when they impair the obligation of contracts, that the validity of their acts may be called in question. The true question is, whether the obligation of the contract is impaired, either by the law operating on it directly, or by its operating upon the remedy, in such a manner as to essentially impair and take away the right of the party to enforce the obligation. It is not enough that the remedy is changed, and rendered less speedy and convenient. If there is still a substantial remedy left, to enable the party to enforce his right, that is sufficient." *James* v. *Stull*, 9 Barbour, 482. " A statute, though operating to lessen the time allowed for the exercise of a previously existing right, is not unconstitutional." *Butler* v. *Palmer*, 1 Hill, 324.

4. The decision in 2 Howard, 608, does not conflict with the foregoing decisions. That decision says : "a state law which prohibits property from being sold on execution for less than two-thirds the valuation, made by appraisers, pursuant to the directions contained in the law, impairs the obligation of contracts, and is inoperative upon executions issued on judgments founded on contracts.". In this very

case, the court says: " It is within the undoubted power of state legislatures to pass recording acts, by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within the limited time, and the power is the same, whether the deed is dated before or after the passage of the recording act.   Though the effect of such a law is to render the prior deed fraudulent and void, as against a subsequent purchaser, it is not a law impairing the obligation of contracts."   2 Howard, 608 ; 1 Ib., 311.

5.   The act exempting certain property from levy and sale on execution, applies to judgments and executions on debts contracted before, as well as after, its passage. 1 Kerwan, 281 ;  Holmes v. Lansing, 3 John. Cases, 75 ; Bigelow v. Pritchard, 21 Pickering, 169;  8 Mass., 468 ;  4 Wharton, 122.

6.   By a statute of New York, passed May 14, 1840, it was enacted, that plaintiffs shall wait until the expiration of thirty days from the entry of judgment, before issuing the execution.   The court held that this act did not impair the obligation of contracts.   3 Hill, 469.

The foregoing authorities are exemplifications of the principle, that legal remedies are, in the fullest sense, under rightful control of the legislatures of the several states, notwithstanding the provision in the federal constitution, securing the inviolability of contracts ; and that it is not a valid objection to legislation on that subject, that the substituted remedy is less beneficial to the creditors than the one which obtained, at the time the debt was contracted.

WOODWARD, J.—The complainant takes the position, that the instrument is not a deed of trust, but a mortgage ; that a mortgage can be foreclosed only by action ; and that the mortgagee cannot sell by virtue of a power, such as is contained in the above instrument.

As one ground for the defendant's inability to sell under this instrument, assuming it to be a mortgage, the complainant refers to section 1210 of the Code, which provides that " in the absence of stipulations to the contrary, the

mortgagor of real estate retains the legal title, and right of possession thereof." From this, he argues that Kerr has not the title in himself, and therefore cannot convey it.

As another ground, he cites the act of February 25th, 1858, (acts 1858, 29), which enacts, "that hereafter no mortgage of real estate shall be foreclosed in any other manner than by action in the proper court; provided, that nothing herein contained shall be construed to apply to deeds of trust. This he urges as a direct prohibition of such sale.

We are unable to concur with the petitioner, in giving this section so extended an application. It was not intended to interfere with the contracts of parties, nor to prohibit them, nor to take away the force of sec. 2097 of the Code. This section is contained in the chapter relating to the foreclosure of mortgages, and enacts that nothing in that chapter, is intended to prevent parties from fixing their own terms to any contract, and prescribing the manner in which those contracts should be enforced. It would be a very strong step for the legislature, to forbid parties making their own contracts, in such respects, and to compel them to go into the courts, even when they might make stipulations entirely satisfactory to both sides. Such a construction is to be adopted only, when there is no just way of avoiding it. In the present case, there is a very clear application to be made of the general expression used in the above act. We all know the evil complained of, which led to the above enactment, and that it was the summary foreclosure of mortgages by the sheriff, upon advertisement only. That this was the object of the act, is further manifest from its title, which is, " an act concerning the foreclosure of mortgages, and amendatory of chapter 118 of the Code." This chapter of the Code authorized the foreclosure by the sheriff, and without action, and also provided for foreclosure by action ; and it is in reference to this alone, that the act of February, 1858, enacts that no mortgage shall hereafter be foreclosed in any other manner than by action. It appears to us quite manifest, that this act

intended only to take away that summary mode of proceeding by the sheriff. That was a provision of the law, and might well be repealed in a few words; whilst, if the intent had been to take away a power of contracting from parties, the title, the terms, and the manner of the act, would have been essentially different, and section 2097 would have been expressly repealed.

But further, the proviso in the section itself, enacts that it shall not apply to deeds of trust. This makes the exception, which we have in view, substantially, if not entirely. The proviso needs not to be restricted to that which may be strictly and technically a trust deed. An instrument is equally a deed of trust, or one containing, or conferring a trust, whether it be for the grantee's own benefit, or for that of another.

The petitioner contends that Kerr is not a trustee, and quotes from Story and Parsons on Contracts, to show that a trustee is one who holds for the benefit of another. The writers thus cited, are speaking of trusts in their strict and technical sense. But every one knows that there is a broader sense to the term, in even more common use than this, the strict one. If this instrument fails, on this account, to be a trust, there must go with it a large class, which have hitherto been regarded as such; and even assignments to a creditor for his own benefit, or for that of himself with others, would not fall under that head. The definitions by other writers quoted by the plaintiff, would include this defendant as a trustee. But this species of authority is of but little force, since the definition depends upon the more or less comprehensive view which the writer takes of the subject.

Still insisting that this is a mortgage, the plaintiff says, the authorities hold that the mortgagee cannot be a trustee for the mortgagor, and as his authority, quotes some remarks found in 1 Hilliard on Mort., 120–1, from the work of Coventry, but which were only his speculative doubts; for, although he said, as quoted by this plaintiff, " that the

form referred to, appeared to have received the censure of the Lord Chancellor, he added, 'yet it is the editor's favorite form, as he had occasion to feel the inconvenience of the mode recommended by his lordship.' " And, in reference to some doubts of Lord Elden, he says: " The above observations of his lordship, were thrown out in the exuberance of his dubitations, and were perfectly gratuitous, and obviously of the first impression." The passage quoted is, therefore, no authority for the doctrine stated.

Mortgages, with a power of sale, have long been a recognized and settled mode of conveyances, although at first some doubt was entertained in regard to them. And, if the above act should be considered as embracing these, the line of distinction between those and deeds of trust, in the more general sense, is not very clearly discerned. 1 Hill. on Mort., chap. 7, secs. 4, 5, 8, 15; Adams on Eq., 121, 126. They have been called trust deeds, in the nature of a mortgage. Adams Eq., 122. At common law, equity had no power to sell, and this could not be done, unless there was a power in the deed. Adams Eq., 120. But in all the books, the power given to sell, is recognized as valid, and the form of the instrument is of little weight. It is impossible, therefore, to regard the statute as including this class of contracts, or else to avoid the conclusion that the proviso intended to except them all.

The respondent urges that, if the act of 1858 should be construed to apply to such a case, then, as the parties had a right to make the contract at the time it was entered into, it was not in the power of the legislature to nullify it afterward; and also, that it is taking away a substantial remedy, and so changing the remedy he had, that the case falls within the principle of *Bronson* v. *Kinzie*, 1 How., 311; *McCracken* v. *Hayward*, 2 How., 608; and *Grantly's Lessee* v. *Ewing*, 3 How., 707. He argues, that this gives a speedy means of producing the lender's money, whilst an action, in its ordinary course, followed by the right of redemption, consumes the space of nineteen months. Although both of these grounds would present serious

doubts, in the way of applying the foregoing act to this particular case, we prefer to place it upon grounds which relate to similar contracts, made after, as well as those made before, the act; and these are, that the act of 1858 did not intend to restrict the power of parties in making their contracts; or else that the proviso intended to save from its operation, those instruments which contain a trust, or power to be executed by a party.

No point is made by the parties concerning the interest, and the cause, or matter, is not in such a position as to call for any disposition of that subject. The bill was brought to restrain the sale, and upon this, the decree of the district court is reversed, and the injunction is dissolved.