# OCTOBER TERM, 1869, AT DETROIT.

---

## Jacob Beeson v. John Comly and Mary Comly.

*Estoppel of Record.* A plaintiff in ejectment, to establish his title, relied upon an estoppel of record arising from a decree upon a bill in equity brought, by his grantor against the ancestor of the defendants and his son, to remove a cloud upon his title occasioned by a conveyance from the said ancestor to the son, alleged to be without consideration ;—the decree granting the prayer of the bill :

*Held,* That the decree was conclusive only as to the title of the son as derived under the deed from his father ; and that no estoppel arises from the decree against the defendants in the equity cause, in favor of the title of the complainant ; the decree not having adjudicated upon the ancestor's title.

*Heard July 8 and 9. Decided October 5.*

Case made from Van Buren Circuit.

This is an action of ejectment, commenced in the Circuit Court for the County of Berrien and transferred to the Circuit Court for the County of Van Buren, in which Jacob Beeson is plaintiff and John Comly and Mary Comly are defendants, to recover a parcel of land of about thirty-eight acres. The evidence introduced by the plaintiff to establish his title, was a quit claim deed from William B. Beeson to himself, and the record of a suit in chancery between William B. Beeson, complainant and Joshua Comly and Milton Comly defendants; and evidence that Milton Comly was the son of Joshua Comly, and died without issue—subsequent to which that Joshua Comly died, devising all his real estate to the defendants in this

suit, and that they claimed the land in controversy under such devise. The Circuit Judge before whom the cause was tried found for the plaintiff and the judgment rendered thereon is brought into this Court for review on a case made.

*Chas. I. Walker,* for plaintiff.

The plaintiff's title depended entirely upon proceedings and a decree in chancery in which Wm. B. Beeson was complainant, and Joshua and Milton Comly were defendants.

The decree declares and provides:

1. That the deed from Joshua to Milton Comly, of November 28, 1842, is fraudulent and void as against the complainant. 2. That Milton Comly execute a deed in fee simple to complainant of the 38½ acres. 3. That in case of neglect or refusal the decree is to stand for and in the place of such deed. 4. That defendants pay costs.

It is upon this decree, founded upon these proceedings, that the plaintiff relies as conclusive evidence of the title to the premises in question having been in Wm. B. Beeson, from whom plaintiff derives title, and the principle question in the case is, whether it is such evidence as against the present defendants, who claim title to the same under the defendants in the chancery suit.

It may be admitted for the purposes of this argument, that said decree is irregular and erroneous, and that it would have been reversed upon appeal, for the title of the complainants rested upon a levy, appraisal, and set off under the general appraisal law, by virtue of an execution, issuing upon a judgment founded upon a contract existing previous to the passage of that law.— *Willard v. Longstreet, 2 Doug., 172.* There is no question but that the Court of Equity had jurisdiction of that case, and this upon two grounds: *First,* Upon the ground of fraud, as the bill

distinctly alleged that the defendants were guilty of fraud against the complainant in making and accepting the deed of November 28, 1842. *Second*, Upon the ground of removing a cloud from the complainant's title.

But it is said that the Court of Chancery had no jurisdiction upon this second ground, for the reason that the defendants, and not the complainant, were in the possession of the premises. But it is not necessary for the purpose of giving jurisdiction upon this ground, that the complainant should be in possession.—*Chautauqua Co. Bk. v. White, 6 Barb. 605 ; Apthock v. Comstock, Hopk. 38 ; Apthock v. Comstock, 2 Paige, 482 ; Petit v. Shepard, 5 Paige, 493 ; Craft v. Merrill, 14 N. Y. 456 ; Chipman v. Hartford, 21 Conn. 496.*

This question is, however, an immaterial one, as the allegation of fraud gave jurisdiction to the Court of Equity. The case, therefore, was one proper for the consideration of the Court. The defendants were before it and submitted to its jurisdiction. It is entirely clear, therefore, that the decree cannot be attacked collaterally by the parties thereto or their privies, and that as to them it is entirely conclusive. *1 Greenlf. Ev. Secs. 522 and 523; Palmer v. Oakley, 2 Doug. 433; Wales v. Lyon, 2 Mich. 281–2; Prentiss v. Holbrook, 2 Mich. 375–6.*

And for this purpose it is immaterial whether the decree was on a demurrer or was that of a simple dismissal on the merits, or on a full hearing, or by a divided court, or on *pro confesso.*—*2 Daniels Ch. Pr. 1,209 ; and 210, note; 2 Story's Eq. Jur. 1,523; Murray v. Murray, 5 John. Ch. 60 and 69; Bouchaud v. Dias, 3 Denio, 238; Coffin v. Nott, 2 Green (Iowa), 582; Hamilton v. Reynolds, 5 Duer, 671; Parrish v. Ferris, 2 Black, 606; Durant v. Essex Co., 8 Allen, 108.*

A *pro confesso* is an admission of the facts stated in the bill, and for that reason a decree founded thereon should be, as it is, held conclusive upon the parties. *1*

*Daniels' Ch. Pr. 577 ; 1 Barbour's Ch. Pr. 372 ; Wooster v. Woodhull, 1 Johns. Ch. 538 ; Williams v. Corwin, Hopk. 371 ; Robinson v. Townsend, 3 Gill and Johnson, 424 ; Ogilvie v. Herne, 13 Vesey, 563, note ; Lauder v. Ready, 1 Sim. and Stu. 44.*

The decree being conclusive, the important question is, *what does it conclude ?* We readily admit that points that only come collaterally or incidentally under consideration are not concluded. *Hopkins v. Lee, 6 Wheat. 109 ; Kennedy v. Scoville, 14 Comst. 61; King & Chase, 15 N. H. 9.* But on the other hand, every point which has been either *expressly,* or by *necessary implication, in issue,* and has been *decided,* or which *must* necessarily have been decided in order to support the judgment or decree, is concluded. *Bank of U. S. v. Beverly, 1 How. 134, 148-9 ; Embury v. Conner, 3 Comst. 522 ; Doly v. Brown, 4 Comst. 72 ; Castle v. Noyes, 14 N. Y. 329 ; Campbell v. Heirs, 1 Clarke (Iowa), 258 ; Thacker v. Chambers, 5 Humph. 313 ; Shears v. Dusenbury, 13 Gray, 292 ; Parrish v. Ferris, 2 Black, 606 ; Town v. Lapham, 34 Vt. 307 ; Church v. Chope, 35 Vt. 323 ; Wright v. Butler, 6 Wend. 284 ; Van Pelt v. Kenbare, 18 Wis. 362 ; 1 Greeenleaf's Ev. 534 ; 2 Smith's L. C., 494 ; Murphy v. Orr 32 Ill. 491.*

And this entirely irrespective of the question whether it was properly or erroneously decided, or whether it was decided on the law or fact. *McDowell v. McDowell, Baily Eq. 324 ; Hungerford v. Cushing, 8 Wis. 324 ; Falkner v. Genler, 10 Wis. 563 ; Tallman v. McCarty, 11 Wis. 430; Shears v. Dusenbury, 13 Gray, 292.*

In applying these well-settled principles to the case under consideration, we say :

The sole ground upon which the complainant was entitled to any relief in the chancery case was that he had become the absolute owner of the premises in question by virtue of his levy, appraisal, and set-off. The fact that he was such absolute owner was distinctly averred in the bill.

It was a material, traversable fact, upon which defendants could have taken issue, and without the proof and finding of which the complainant would have been entitled to no relief whatever. By the *pro confesso* that fact was admitted, and upon that admission it was found by the Court to be true. Such finding was *absolutely essential to the rendition of the decree*, and upon it the decree entirely rests, and that creates an estoppel as much as if the finding was in express terms.—*Town v. Lapham, 34 Vermont, 307 ; Church v. Chope, 35 Vermont, 223.* And when a decree is thus necessarily based upon the finding or the assumption that the title to the property in controversy is in one of the parties, it is conclusive upon that question, and no new evidence can be introduced to affect it.

This is not at variance with *Mason's Executors v. Alston, 5 Seld. 28.* There it was not necessary to find the due execution of the title to sustain the decree.

Here there was no other possible ground for the decree, and the Court must have found the title to the premises in the complainant, and upon that point the estoppel is complete.

*D. D. Hughes,* for defendants.

1. The bill in chancery did not make a case to quiet title. It was framed to set aside the deed from Joshua to Milton for fraud, and nothing else. The complainant makes no claim to the land except under his set-off on execution. He makes no allegation of title except that "his title has become absolute, the time of redemption having expired." The defendants were apprised of no other claim and had notice of no other. The only relief which could be given under this bill was to set aside the deed to Milton, leaving the execution title to stand on its own merits, and the decree could not estop the defendants, except in denying that the deed was fraudulent.—*King v. Harrington, 14 Mich. 540.*

2. The decree is only a decree setting aside the alleged fraudulent deed, and does not assume to quiet the title of complainant. It nowhere declares the complainant to be the owner of the land, but declares the deed to Milton void as against complainant and his judgment, and decrees a quit claim deed which has not been made from Milton, and that the decree stand in place of such deed.

But suppose the decree had been executed by the making of the deed by Milton to complainant. Then the legal title would remain in Joshua; for the bill alleges that Milton had reconveyed to Joshua, and a deed from Milton to complainant could carry no title. The bill shows the legal title in Joshua, and there is no decree that Joshua shall convey.

.And again, the decree that the decree shall stand in place of the deed does not vest the legal title, but only an equitable one, which would not maintain ejectment, even if it was for a conveyance from Joshua.—*Hickey's Lessee v. Stewart, 3 How. 759; Mummy v. Johnston, 3 Marshall, 1,089.*

3. The Court of Chancery had no jurisdiction to quiet the complainant's title, and if the decree did so in terms it would be so far void, and would not estop the parties or privies.

It appears from the bill that the complainant was not in possession and that the defendants were, and it has been uniformly held in this State that in such a case at least the Court of Chancery was not the proper tribunal for the trial of titles.—*Devaux v. Detroit, Harr. 101; Abbott v. Allen 2 Johns. Ch. 521; Blackwood v. Van Vleet, 11 Mich. 256; Gage v. Hill, 43 Barb. 47; Hickey's Lessee, 3 How. 756; 2 Ohio 393.*

4. But suppose the Court of Chancery had jurisdiction to quiet complainant's title, it has not done so in a manner to make it *res adjudicata* on the question of the validity of plaintiff's title, because—

It came incidentally and collaterally in question only. It does not appear that it was passed upon, except argumentatively, from the decree. The passing upon that title was not the proper purpose and object of the chancery suit. Title in plaintiff was never found or determined by the Court of Chancery, but assumed. No issue was joined upon it. The bill set forth the facts constituting complainant's title. The order pro. con. and the decree could do no more than find those facts; whether they constitute title or not is a conclusion of law which cannot work an estoppel. The facts pleaded in the bill make no title, and if the defendants had admitted by answer that they did, they would not be estopped by this erroneous conclusion of law.—*Duchess of Kingston, 20 Howells St. T. 355 ; Outram v. Morewood, 3 East, 357; Blackman's case, 1 Salk. 291; Barrs v. Jackson, 20 Eng. Ch. 585 ; Story's .Eq. Pl. 791 n. 2; King v. Chase, 15 N. H. 9; 1 Gr. Ev. 528.*

In *Crandall v. Gallop, 12 Conn., 372,* the plaintiff in ejectment claimed under an administration deed. Defendant pleaded a deed from the intestate and a decree in chancery declaring that intestate was of sound mind when he made it, and that he entered under the decree. It was held (*372*) that the plea was bad, because in the chancery suit the *existence* of the deed was not in issue, but only the *facts tending to invalidate it.* And it could not be known, except argumentatively, that the existence of the deed was in question. See also *Standish v. Parker, 2 Pick., 20.* The Supreme Court of Iowa has recognized and approved these cases and this doctrine. *Haight v. Keokuk, 4 Iowa, 207.* In New York the same doctrine is held. *Brewster v. Striker, 2 Comst. 40; Mason's Ex. v. Alston, 5 Seld. 33.*

5. In this case the plaintiff has made no case which the defendants are called upon to deny, and there is nothing to feed the estoppel. He should have given in evidence the judgment and proceedings under it and then the ques-

tion of estoppel might arise. Estoppel is not a distinct mode of acquiring title, it is not a transfer or assurance, but depends as a secondary incident upon other direct alienations.—*2 Hill Real Prop. 419.*

CHRISTIANCY, J.

This case comes before us upon a case made, after judgment against the defendant in an action of ejectment commenced in Berrien, but tried in the Circuit Court for Van Buren County.

Plaintiff claimed to derive title through an execution upon a judgment of the Circuit Court for Van Buren County, rendered October 18, 1843, in an action where William B. Beeson was plaintiff, and Joshua Comly was defendant, upon a promissory note made by said Comly March 2, 1836.

No sale was made by virtue of the execution, but the land (thirty-eight acres, part of a larger tract), was appraised by three appraisers and set off to William B. Beeson, plaintiff in the execution, February 25, 1845, and accepted by him in satisfaction of the execution.

William B. Beeson conveyed to the present plaintiff by quit claim, February 5, 1849, during the pendency of the chancery suit, presently to be mentioned, but more than two years prior to the decree. Joshua Comly continued in possession until his death in 1862, and devised the farm, of which these premises are a part, to the present defendants, who have since remained in possession claiming under his will.

Neither the judgment nor the execution, nor the proceedings under it, were introduced in evidence on the trial of the ejectment. The question therefore does not arise, whether the appraisal and set off would be valid as against Joshua Comly, the cause of the action having arisen upon a contract made prior to the appraisal and set off laws, un-

der the principle settled in *Bronson v. Kinzie, 1 How. 311* and *McCracken v. Hayward, 2 How. 608.*

But to preclude any such question, and to estop the defendants from disputing the title of William B. Beeson, (through whom the plaintiff claimed), the plaintiff was allowed to introduce upon the trial, against the objection of the defendants, the record of a cause in chancery wherein said William B. Beeson was complainant and said Joshua Comly and his son, Milton Comly, were defendants.

As appears by the record thus introduced, the bill in that cause, after stating the judgment and execution, the appraisal and setting off of the land and its acceptance, alleges that Joshua Comly had no other property liable to execution ; that he was, and for more than ten years had been, in the occupation of the land, that complainant had offered to take part of said land in payment and satisfaction, which said Comly refused; that, on the 28th day of November, 1842, said Joshua Comly and his wife conveyed the quarter section, (of which the premises in question are a part) except about ten acres thereof to their son, Milton Comly, who then, and (the bill alleges) still resides with his father, and is less than twenty-two years of age. That the land so conveyed to said Milton was worth two hundred dollars and more; that said Milton paid nothing for the land and had no means of paying for it; that the description of the land conveyed in said deed was as follows: " a part of the north east quarter of Section twenty-six in township seven south, of range seventeen west, containing one hundred and fifty acres;" charges that said deed is void for uncertainty in the description of the land intended to be conveyed;. alleges that said Joshua yet resides, and for years past has resided, on the land, improving and cultivating it as if it were his own, and has not parted with the possession ; charges that said deed to Milton was intended and made to hinder, delay and defraud com-

plainant, and was fraudulent and void; alleges that the title of complainant to the thirty-eight acres of land, so set off to complainant, had become absolute, the time of redemption having expired; that said fraudulent conveyance to said Milton, is a cloud upon complainant's title. The bill further shows, upon information and belief, and charges the truth to be that, about the month of January, 1846, said Milton did, without consideration, reconvey by deed, to said Joshua, the land so previously conveyed by said Joshua to him, though said deed from said Milton has not been put on record, as complainant is informed and believes.

The prayer for relief is only "that said deed of conveyance from said Joshua Comly to said Milton Comly may be decreed and declared null and void, and of no force or effect whatever, and may be decreed to be delivered up and cancelled, and for such other relief or such further relief as shall be agreeable to equity and good conscience, etc.

The defendants, Milton and Joshua Comly, appeared and put in a demurrer to the whole of the bill except that portion which alleges that Joshua, at the time of the levy, had no other property liable, etc., and, for cause of demurrer, insist that it appears by the bill that defendant Milton has no interest in the land, and that complainant has not stated such a case as entitles him to the discovery or relief sought.

The defendants answer and take issue upon, so much of the bill as charges that Joshua, at the time of the levy, had no other property.

The demurrer was overruled and the defendants ordered to answer in twenty days after notice of the order; upon failure to do which, the bill was afterward duly taken as confessed; and thereupon, on the 4th day of August, 1851, a decree was entered, which, after the usual caption and recitals in such cases, is in these words:

"On motion of N. Bacon, solicitor for complainant, it

BEESON v. COMLY.

is ordered, adjudged and decreed, that the deed, mentioned and set forth in said bill, made by Joshua Comly and Elizabeth, his wife, on the twenty-eighth day of November, one thousand eight hundred and forty-two, to the said Milton Comly, is fraudulent and void, as against the judgment and execution in favor of the complainant against said Joshua Comly, mentioned and set forth in said bill of complaint; and the said deed is hereby ordered, adjudged and decreed to be fraudulent and void; and it is further ordered, adjudged and decreed that the said Milton Comly execute and deliver to the complainant a quit claim deed in fee simple of the following described premises, which were appraised and set off to the complainant on said execution and described in said bill of complaint;" [here follows the description], the deed to be prepared by the solicitor of the complainant; and in case of his neglect to execute said deed, then and in such case, it is further ordered, adjudged and decreed that this decree stand for and in the place of such deed: and it is further ordered, adjudged and decreed that the complainant recover against the said defendants his costs in this behalf to be taxed and that he have execution therefor."

It is manifest from this statement of the case:

1. That the bill alleges no other title in the complainant, William B. Beeson, than that derived from the proceedings under the execution, and no title arising in any other way could have been found by the court under the pleadings and the order taking the bill as confessed:

2. That the Court did not by its decree find or adjudicate upon *this title* except inferentially, and this only as against Milton Comly.

3. To say nothing of the charge in the bill that the deed from Joshua to Milton Comly was void for uncertainty, the bill shows upon its face, upon the information and belief of complainant that whatever title might have

19 MICH.—O.

been conveyed to Milton by the alleged fraudulent deed, had been reconveyed by Milton to Joshua prior to the filing of the bill.

Now the fact, that the reconveyance had not been recorded, might have rendered it proper, if complainant was entitled to any relief under his bill, to take a decree against Milton for a release; but to quiet the title as against Joshua Comly, upon the case made upon the bill and to estop him by the decree, either his title must have been declared or decreed to be void as against complainant, or he should have been decreed to execute a release, or, at least, the decree should show some adjudication against him on the subject of his claim or title; otherwise, though Milton should perform the decree against him, and execute a conveyance to complainant, this would not affect the title or claim of Joshua to whom Milton had already reconveyed; and the title of Joshua would remain the same in all respects, as if the bill had never been brought.

Now the decree, except merely as to costs, is a decree against Milton and his rights alone. Neither Joshua Comly nor any right or claim of his is so much as mentioned or alluded to in it; nor is there anything in the decree showing any final disposition of the bill, as to him. No relief is granted against him, nor is the bill as to him dismissed. With the exception of the very dubious inference to be drawn from the granting of costs against both defendants, there is nothing in the decree to show that the bill was not intended to be left pending as against him for future action.

Whether this omission to take a decree against Joshua Comly or in any manner to adjudicate upon his rights, was a mere oversight in drawing up the decree, or intentional and upon some particular theory entertained by the complainant's solicitor or the Court, the result upon the question of estoppel by the record of that decree must be the same. But upon a careful examination,

the bill itself will be found to furnish strong ground for believing that the pleader who drew the bill did not contemplate any decree or adjudication against Joshua Comly or his rights or claims, as at all necessary. No such decree or adjucation is prayed for by the bill. The only specific relief prayed for, is that the deed from Joshua to Milton Comly may be declared and decreed null and void, and may be decreed to be delivered up and cancelled.

The bill seems to go upon the theory that by getting rid of the cloud created by this deed, the title would then sufficiently appear to have been in Joshua Comly at the time of the levy under the execution, and that a good title at law would thus be made by the proceedings under the execution without any aid of a Court of Equity as against Joshua Comly or his title or claims. Both the prayer of the bill and the decree are exactly in accordance with this theory. Upon this theory it is obvious that the title, as between complainant and Joshua Comly, would be left for decision at law upon the validity of the proceedings under the execution. Such at all events we think must be the result under this record upon whatever theory the case proceeded.

Admitting therefore that the Court had jurisdiction of the case made by the bill, that it was competent for the Court to have rendered a decree which would have estopped Joshua Comly and those claiming under him, and that the plaintiff Jacob Beeson, who acquired his interest in the premises by quit claim long prior to the decree would be entitled to the same benefit of the estoppel as if the deed had been made subsequent to the decree, questions upon which there is room for some doubt, and upon which we express no opinion; still, the present decree, in connection with the record, does not in our opinion create any estoppel as against the rights or claims of Joshua Comly, or of these defendants claiming under him.

And the plaintiff having rested his case wholly upon the supposed estoppel created by this record, and neither shown nor attempted to show any other title, was not entitled to a judgment.

The judgment must therefore be reversed with costs and a new trial awarded. This being a case made not upon an agreed state of facts, but upon questions of law merely arising upon exceptions, is to be considered as a substitute for a bill of exceptions and writ of error. It is not therefore a proper case upon which to render in this Court, such judgment as ought, in our opinion, to have been entered in the Court below.

The other Justices concurred.